[Crim. No. 7589. Second Dist., Div. Three. July 28, 1961.]

THE PEOPLE, Respondent, v. HERMAN HOLLANDER, Appellant.

W. P. Butcher, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused in count I of forging and uttering a check for $87.14, and in count II of forging and uttering a check for $78.14. A jury found him guilty as charged. A new trial was denied. Defendant was sentenced to state prison. He appeals from the judgment.

There was evidence on behalf of the prosecution of these facts: Bill Beckwith was the owner of a ranch in Ventura County. Defendant and one Charles Gardner resided on the ranch and were acquaintances. Gardner broke into Beckwith's residence and stole, among other things, a check protectograph and some blank checks. Following the burglary, Gardner and defendant drove to the home of Gardner's brother in Lompoc, Santa Barbara County, taking the protectograph, the checks, and a typewriter with them. On arrival, using the protectograph, defendant, Gardner, and Gardner's brother filled in the blanks in the two checks in question. Defendant signed the name "Bill Beckwith" to the checks. Gardner cashed the $87.14 check at a liquor store in Lompoc in defendant's presence. Defendant cashed the $78.14 check at another liquor store in Lompoc in Gardner's presence. Defendant was wearing levis on each occasion.

Charles Gardner testified on behalf of defendant that he stole the protectograph and checks; defendant had nothing to do with the burglary and did not know anything about it at any time; he committed it alone; he hid the stolen items at a ranch in Santa Paula where he was living; a week later he put them in his car and went to his brother's home in Lompoc with defendant who was living on the same ranch; defendant was working as a car salesman at the time; he did not know how to spell "Bill Beckwith"; the next day he asked defendant how to spell "Beckwith"; defendant, at his request, wrote it on a piece of paper and handed it to him; he then handed defendant an envelope and asked him to write Beckwith's name and address on it; he wanted to use defendant's writing of Beckwith's name as a means of forging Beckwith's name by tracing it on the checks; as the reason for having defend-

ant write Beckwith's name and address, he told defendant he had worked for Beckwith, Beckwith owed him money, and he was going to write to him and tell him where to send it; he put the piece of paper and the envelope in his pocket; later that day he took the piece of paper and the envelope out to his car; he was alone; he then put the two checks against the writing and traced the signature "Bill Beckwith" on them; prior to that time he had typewritten the name of the payee and the amount on each check, and with the protectograph had stamped the amount and the name "Beckwith Ranch" on them; defendant had nothing whatsoever to do with writing the checks other than innocently furnishing him with a sample of Mr. Beckwith's handwriting which he wrote without the knowledge that he was going to use them to forge Mr. Beckwith's name; he endorsed and cashed the checks; he was alone when he cashed the $78.14 check; after cashing that check, he drove back to his brother's house and picked up defendant; he drove to the store where he cashed the $87.14 check; defendant remained in the car; after he had cashed the check and had the money in his pocket, defendant came into the store; defendant had on a pair of slacks, a brown shirt, and a jacket; he was not wearing blue jeans or overalls; he and defendant lived together and were "pretty" good friends; he had previously been convicted of robbery and had pleaded guilty to the Beckwith burglary; he was imprisoned in Vacaville.

K. O. Johnson, sales manager of a Chevrolet agency in Santa Paula, testified he employed defendant as a salesman and defendant worked two to three weeks. The dates defendant worked were not developed. He received one commission.

Curtis Gardner, brother of Charles Gardner, testified that on the day after Charles and defendant arrived at his home Charles asked him for some writing paper and envelopes, saying he wanted to write a letter to the man he worked for, to have him send his money to him in Lompoc; he obtained the paper and envelope for his brother; defendant did not have blue jeans on that day. No levis were found by the police.

Defendant did not testify.

On September 19, 1960, defendant had appeared for arraignment. The minutes reflect this finding: "It appearing to the Court that the defendant does not have sufficient means with which to employ counsel, W. P. Butcher is hereby appointed to aid the defendant in said cause." On September

Mr. Butcher was relieved. On October 3 defendant, in propria persona, was arraigned, pleaded not guilty, and trial was set for October 25, 1960. The cause was tried before the Honorable C. Douglas Smith and a jury. Defendant represented himself. The jury disagreed.

After the trial and disagreement of the jury, the cause came on for resetting on November 1, 1960, before Judge Smith. Defendant, appearing in propria persona, requested the court to order a transcript of the prior trial. The request was denied and retrial was set for December 6, 1960. The request for a copy of the transcript of the prior trial was renewed on November 21 and denied.

On November 30, 1960, defendant caused subpoenas to be issued and delivered to the sheriff for the judge who presided at the prior trial and for the jurors who had served at that trial. When the cause came on for retrial on December 6 before Judge Smith, defendant appearing in propria persona, the court on its own motion quashed defendant's request for the issuance of the subpoenas. Apparently the sheriff had served some of them on December 1 and on December 5. Defendant then filed an affidavit of prejudice against Judge Smith and the cause was transferred to another department, the Honorable Ernest D. Wagner presiding.

On December 6 before Judge Wagner, after a jury had been impaneled, defendant, appearing without counsel, again requested the court to order a copy of the reporter's transcript of the prior trial, stating there were many discrepancies between the testimony of the People's witnesses at the prior trial and at the preliminary hearing. The request was denied. The following then occurred: "MR. HOLLANDER: And I ask the Court to reconsider my subpoena rights on my other witnesses. THE COURT: Well, Judge Smith has ruled upon those matters already, Mr. Hollander. Let me say this to you—if it develops that you need a witness who can testify as to a material matter here, I will see that he is produced if we are able to produce him or her, but we simply can not go out and subpoena an innumerable number of people simply because you want them. You must make a showing as to the materiality of their testimony. The same thing applies to the People."

The first assignment of error is that defendant was denied his constitutional right "to have the process of the court to compel the attendance of witnesses in his behalf." (Const., art. I, § 13.)

It does not appear that Judge Smith abused his discretion in quashing defendant's request for the issuance of the subpoenas. The apparent purpose of subpoenaing the judge who presided at the prior trial and the jurors who served in that trial was to impeach the People's witnesses if their testimony was inconsistent with the testimony they gave at that trial. There was no showing that any one of the witnesses subpoenaed would have impeached any of the People's witnesses.

The second assignment of error was the refusal of both Judge Smith and Judge Wagner to order a copy of the reporter's transcript of the first trial for use by defendant and the denial by Judge Wagner of a reasonable continuance in which to have the transcript prepared.

As previously stated, on November 1, 1960, defendant requested Judge Smith for an order directing that the transcript be prepared. The request was denied. On November 21 the request was renewed and denied. The cause came on for the second trial on December 6, 1960, defendant appearing in propria persona. Defendant then requested Judge Wagner for the same order. The request was denied. Judge Wagner stated: ''I am without any jurisdiction to order a transcript prepared so it will have to be denied.'' The trial proceeded. On December 7, because of illness of a juror, further trial was continued to December 13, at which time trial proceeded and defendant again ''moved the Court for a copy of the transcript of the record of the former trial.'' The motion was again denied.

After the People had rested on December 13 defendant made a statement to the jury, called and examined two witnesses, Mr. K. O. Johnson and W. P. Butcher, an attorney at law. The record reflects the following then took place: ''The defendant then moved the Court to reappoint W. Preston Butcher previously appointed by the Court, and refused by the defendant, to represent him as counsel in this trial. Said motion was granted. The defendant, through his counsel then moved for a continuance, and to have the Reporter's Transcript of the present and previous trials prepared and furnished to him at Court expense. Said motion was denied. . . . [The jury was excused until December 14.] The Court then read its notes of the present trial and the Reporter read his notes of the trial to the defendant and his Counsel. The Court then allowed the Counsel for the Defendant to take its notes of the trial for study until Court convened the next

day.'' In the course of this proceeding Judge Wagner said that if after Mr. Butcher read the notes there were witnesses he wanted recalled for further cross-examination, he would entertain a motion to recall them, saying, ''The cross examination was very brief, and I don't think it was gone into as carefully as it should have been.'' The trial continued, defendant represented by Mr. Butcher, and was concluded on December 14.

Defendant contends the court committed prejudicial error in denying him a copy of the transcript of the prior trial at the expense of the county.

The statement of Judge Wagner, ''I am without any jurisdiction to order a transcript prepared so it will have to be denied,'' was in error.

Section 69952 of the Government Code, formerly section 271 of the Code of Civil Procedure, provides: ''In criminal cases in which the court *specifically so directs*, the fee for reporting and for a transcript ordered by the court to be made shall be paid out of the county treasury on the order of the court, except that when a daily transcript is ordered pursuant to Code of Civil Procedure Section 269 such section shall apply. In any case, the court shall not order to be transcribed and paid for out of the county treasury any matter or material except that reported by the reporter pursuant to Code of Civil Procedure Section 269.'' (Emphasis added.)

In pertinent part, section 269 of the Code of Civil Procedure provides: ''The official reporter of a superior court, . . . must, . . . on the order of the court, [take down the proceedings] ; and if directed by the court, or requested by either party, must, within such reasonable time after the trial of such case as the court may designate, write out the same, or such specific portions thereof as may be requested, . . . and certify to the same as being correctly reported and transcribed, and when directed by the court, file the same with the clerk of the court.''

Section 69952 of the Government Code clearly gives the trial judge the power to order paid by the county the sum necessary to comply with an order lawfully made by it in a criminal case under section 269 of the Code of Civil Procedure. (*Fraser* v. *Payne*, 3 Cal.2d 630, 634 [45 P.2d 345].)

Section 274c of the Code of Civil Procedure providing for reporters for municipal courts reads substantially the same as section 269. *Hidalgo* v. *Municipal Court*, 129 Cal.

App.2d 244 [277 P.2d 36], holding that a defendant convicted of a criminal offense in a municipal court was not entitled to a reporter's transcript on appeal to the superior court, construed section 274c, saying (p. 246) : "From a reading thereof [§ 274c] it would appear that whether a reporter be present in a criminal proceeding rests in the discretion of the court, that whether a transcription of a duly appointed reporter's notes be made is also committed to the discretion of the municipal court judge, and, that the preparation of such transcript becomes a charge against the county only when an order for its preparation is made by the judge. . . .

"[P. 248.] Respondent's contention that once the municipal court judge has exercised his discretion and ordered a reporter to report the proceedings, the right of a convicted defendant to a transcript on appeal is automatic cannot be sustained. The same discretion that makes the presence of a reporter in a municipal court proceeding subject to a court order, is conferred upon the judge in relation to the preparation of a transcript."

And in *County of San Diego* v. *Milotz*, 46 Cal.2d 761, it is said (p. 770 [300 P.2d 1]) : "It appears that in misdemeanor cases, the taking down and transcription of testimony and other proceedings is a public charge only when the court so specifically directs, and this direction can only be made at the demand of either the district attorney or the defendant or his attorney (Code Civ. Proc., § 274c, incorporating Gov. Code, § 69952), in which event they are payable on the court's order from the county treasury."

*Preston* v. *Municipal Court*, 188 Cal.App.2d 76, says (p. 81 [10 Cal.Rptr. 301]) : "Government Code section 69952 provides that the furnishing of free transcripts is entirely discretionary. . . ."

Under the circumstances of this case we think it was prejudicial error not to order a transcript of the prior trial. Defendant made his first request more than a month before the second trial began. He was indigent. There was ample time in which to have the transcript prepared. We think the transcript of the prior trial comes within the same category as documents which it has been held must be made available to a defendant prior to trial and during the course of the trial. Documents which it has been held must be made available to a defendant are : written statements of the accused (*Powell* v. *Superior Court*, 48 Cal.2d 704, 705-709 [312 P.2d 698]) ; transcripts of recorded statements of the accused

(*Cash* v. *Superior Court,* 53 Cal.2d 72, 74 [346 P.2d 407]); written statements of prosecution witnesses relating to matters covered in their testimony where the statements are sought by the defense for purposes of impeachment (*People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428]); transcript of taped recordings of statements made by the accused and by prosecution witnesses (*People* v. *Cartier,* 51 Cal.2d 590, 594 [335 P.2d 114]); transcripts of statements used by the prosecution in impeaching an accused's witness (*People* v. *Carter,* 48 Cal.2d 737, 752 [312 P.2d 665]); documents in the possession of the People which are relevant and material to the defense (*People* v. *Chapman, supra*).

██ "The basis for requiring *pretrial* production of material in the hands of the prosecution is the fundamental principle *that an accused is entitled to a fair trial.*" (*Cash* v. *Superior Court, supra,* 53 Cal.2d 72, 75. Emphasis added.)

██ "The value to defendant of seeing the statements made by the witnesses is that to do so might enable him to impeach their testimony *at the trial.*" (*Tupper* v. *Superior Court,* 51 Cal.2d 263, 265 [331 P.2d 977]. Emphasis added.) ██ In order to obtain production, the defendant is not required to show there is any inconsistency between the document sought and the testimony of the witness. (*People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428]; *People* v. *Gallegos,* 180 Cal.App. 2d 274, 277 [4 Cal.Rptr. 413].)

*Preston* v. *Municipal Court,* 188 Cal.App.2d 76 [10 Cal. Rptr. 301], was an appeal from a judgment denying mandate sought to compel the municipal court to furnish a reporter's transcript. The question was whether an appellant was entitled to a reporter's transcript at the expense of the county on an appeal from a judgment of conviction for a misdemeanor in the municipal court. The appellant was without funds to pay for a transcript. The court first held that the statutory provisions which grant a publicly supplied transcript to criminal defendants in the superior court do not apply to such defendants in the municipal court, and stated (p. 87):

"The California courts have recognized that a deprivation of due process may occur in the inability of the indigent to appeal by reason of poverty. In holding that a defendant in a criminal case appealing from the denial of a writ of error *coram nobis* is entitled to be furnished a record, the majority opinion in *In re Paiva, supra,* 31 Cal.2d 503 [190 P.2d 604], pointed out: '(See also *State* v. *Criminal Court* (1942), 220 Ind. 4 [40 N.E.2d 971], in which . . . an application for a

record at the expense of the state upon a showing that the defendant-petitioner ''is a poor person, without means of paying for a record which he wishes to use in perfecting an appeal from the judgment of the respondent court denying his petition for a writ of error *coram nobis*,'' was denied. Such denial, it has been suggested, may amount to a deprival of due process. (*Ex parte Davis* (1942), 318 U.S. 412 [63 S.Ct. 679, 87 L.Ed. 868]; *Barton* v. *Smith* (9 Cir., 1947), 162 F.2d 330.)' . . .

''[P. 85.] The United States Supreme Court has held that in such circumstances as those of the instant case, the indigent is entitled to the free transcript. He must, as an indigent, enjoy an equal protection in access to the full resources of our courts as that of the affluent.''

 As said in *Powell* v. *Superior Court*, 48 Cal.2d 704 (p. 709 [312 P.2d 698]): ''The state in its might and power ought to be and is too jealous of according a defendant a fair and impartial trial to hinder him in intelligently preparing his defense and in availing himself of all competent material and relevant evidence that tends to throw light on the subject-matter on trial.''

The fact that Mr. Butcher came into the case after the People had rested and after two witnesses had been called by defendant and that he was furnished with the judge's notes and that some parts of the transcript of the second trial were read to him does not answer the problem. Mr. Butcher was without any knowledge of what had transpired at the prior trial other than a short extract from the testimony of a police officer. Defendant sought the transcript for the purpose of impeaching witnesses of the People and he said so repeatedly. Defendant, while acting in propria persona, had attempted to impeach witnesses of the People. He was frustrated in his efforts because of the lack of the transcript. And, as Judge Wagner commented: ''The cross examination was very brief, and I don't think it was gone into as carefully as it should have been.''

It is asserted the court erred in rulings on cross-examination of Charles Gardner. On direct examination Gardner testified he had pleaded guilty to the charge of burglary of the Beckwith home and that he was in state prison therefor. On cross-examination this occurred: ''Q. Have you even been convicted of a felony, Mr. Gardner. A. Yes. Q. More than one? A. Yes. . . . Q. By Mr. Huseman [District Attorney]:

. . . What was the first one, Mr. Gardner? A. Robbery. Q. Where was that? A. Texas. Q. And when? A. Oh, '49, '50. Q. And your second conviction was the burglary charge; is that correct? A. Yes.'' (Burglary of the Beckwith home.) After further cross-examination on other matters this occurred: ''Q. Had you served your entire time on the robbery charge, Mr. Gardner?'' Defendant's objection was overruled. The examination continued: ''A. Yes, I served time on the robbery charge. Q. Have you served the entire time? A. Yes. Q. Were you on parole? A. No. Q. In other words, you are discharged from parole? A. I got the discharge when I served my time. Q. Are you in Vacaville now on a violation of parole? A. Yes, but not no parole from no robbery, no. Q. What are you on parole from? A. Burglary. Q. On the burglary charge; is that correct? A. Yes. Q. Has your term been set yet on the burglary charge? A. No.''

█ It may be shown by the examination of a witness that he has been convicted of a felony, the number of felonies, and the names of them. (Code Civ. Proc., §§ 2051, 2065; *People* v. *Tubby*, 34 Cal.2d 72, 79 [207 P.2d 51].) █ In asking the questions the district attorney should not inquire into the details and circumstances of the offense. (*People* v. *Chin Hane*, 108 Cal. 597, 606-607 [41 P. 697]; *People* v. *Darcy*, 101 Cal.App.2d 665, 671 [226 P.2d 53].) █ The objection to the question as to whether Gardner had served his entire time on the robbery conviction should have been sustained. █ The remainder of the examination with respect to Gardner's being on parole was improper.

*People* v. *Wynn*, 44 Cal.App.2d 723, says (p. 732 [112 P.2d 979]): ''This line of inquiry went far beyond that allowed by law, for a cross-examiner's questions must be limited to the fact of conviction and the nature of the crime; he may not go into the details or circumstances surrounding the crime [citations]; and certainly the cross-examiner cannot delve into the question of the length of time served and conditions or circumstances surrounding the parole of a defendant. It would belie human experience and challenge common sense to say that such conduct was not prejudicial. True, no objection was made nor was the court requested to admonish the jury to disregard such questions and any inferences to be drawn therefrom, but it is extremely doubtful, as well as improbable, that any objection or admonition to the jury would have removed the effect of such conduct.''

It is apparent from the record it would have been futile for defendant's counsel to have objected to the questions following the overruling of the objection to the question whether Gardner had served his entire time on the robbery conviction. In *People* v. *Wynn, supra,* it was held that the asking of such questions was prejudicial misconduct.

Reversed.

Shinn, P. J., and Ford, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 20, 1961.