[Crim. No. 3951. First Dist., Div. Three. Jan. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GLENN DREW BERRY, Defendant and Appellant.

Carl B. Shapiro, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant, having been charged with violation of section 278 of the Penal Code of the State of California, which makes it a felony to take or entice away any minor child, maliciously, forcibly or fraudulently, with intent to detain and conceal such child from its parent, was convicted of the offense and was sentenced to state prison. He appeals upon the grounds that it was error for the superior court (1) to deny him a transcript of a previous trial, in which the jury disagreed, at county expense; (2) to deny him the appoint-

ment of an expert, to be paid by the county, to analyze certain paint specimens; and (3) to deny him the appointment of an investigator, also to be paid by the county.

## Summary of the Testimony

On August 22, 1960, Stella Louise Johnson, a 12-year-old girl, was accosted, she testified, by appellant, while Stella was playing with her brother and her cousin, and was asked if she would like to baby-sit for appellant's child. This occurred in Marin City, in the County of Marin. Appellant was in a green automobile. Stella asked her grandmother (her mother was at work) and was advised against going, but agreed with appellant to go with him. An 11-year-old girl named Linda Suzy Fowler testified that while she was playing with two children in Marin City, she was asked by a man, whom she identified as the appellant and who had been driving a greenish car, if she would baby-sit. Linda had seen a can of beer between the legs of the man in the automobile, and also had seen a paper bag "sitting on the floor." Linda knew Stella, but they were not together at the time of either incident, that is, the approach of the man to Stella or his approach to Linda.

Stella related to the jury that appellant, instead of driving her to Mill Valley, where he said he lived, proceeded up Mount Tamalpais. He drank a can of Lucky Lager beer. There was a paper bag in the car. She testified that appellant told her that this wife lived in the woods. He made reference to his attempt to have Linda baby-sit. Somehow the car came to a stop and Stella jumped out, ran to the ranger station and reported what had happened. A green vehicle then passed the ranger station, Stella pointed it out to the ranger as the car in which she had been riding, and the ranger started in pursuit. When Stella reported the incident to the ranger, he telephoned to the sheriff's office. Then, a few minutes after the report by Stella to the ranger, the witness Marvin Fernandez was driving his white Thunderbird automobile between the ranger station and Stinson Beach and a green Pontiac rounded a curve on the wrong side at a high rate of speed, and, as Fernandez turned off the road, sideswiped the Thunderbird. Both vehicles came to a stop and Fernandez saw the driver, whom he identified as appellant. Fernandez testified that appellant then drove away and Fernandez proceeded to the ranger station to report the hit-and-run incident, and the report was relayed to the highway patrol. The

importance of the identification by Fernandez is that appellant completely denied having been on the road where the ranger station is located.

Appellant was arrested while he was driving his green Pontiac into the gasoline station at Dolan's Corner, some 8 miles east of the ranger station. The arrest was made by Deputy Sheriff Mauberret, who was looking for the vehicle by description for both the child stealing and the hit-and-run incidents. Mauberret saw Lucky Lager beer and a paper bag in the vehicle, and noticed damage to the left front headlight and fender, and white paint smears on the left side of the bumper. Sergeant Gibbs of the sheriff's office interrogated appellant, and was told by him that he had not been in Marin City at all during the day, that he had not been up Mount Tamalpais, and that he was going into the Richfield Station to fill his tank. Gibbs testified that appellant told him that he, appellant, had been driving along Highway 101 and across Richardson Bay Bridge and had noticed that his gas tank was empty, and was going to the station to have it filled. It seems (it is somewhat difficult to state positively because the references are to blackboard diagrams which were not made part of the record) that the station was easily approachable from the road which passes the ranger station, but was not so readily accessible from Highway 101. In any case, Gibbs asked appellant why he had gone so far off the highway, and appellant stated that he always purchased his gasoline at this station.

The witness Spurrell, one of the service station attendants, testified that appellant came over to the car when Spurrell was about to park it and asked Spurrell to ''ditch the car so the cops couldn't find it,'' or words to that effect. Spurrell and the owner of the station, Arthur Weiman, did not know appellant as a regular customer and, so far as they could recall, had never sold him gas.

The witness Burd, a criminologist employed in the laboratory of the State Bureau of Criminal Identification and Investigation, testified that he had analyzed samples of green paint on the white Thunderbird and samples of white paint on the Pontiac, and that the particles of paint could have been transferred from the Fernandez and Berry vehicles, but that it was impossible to state that the particles of the different colored paint on each vehicle were identical with the main body of paint on the other vehicle. He testified positively that there

was no identity between particles of white paint that were found on the green Berry vehicle and the paint on a certain Ford station wagon which appellant had owned and which appellant testified had been in a minor collision with his own green Pontiac some two months before the events of this case.

Appellant testified that he was not feeling well on the morning prior to his arrest; that he left work at about 9 o'clock, although he had not been drinking; that later he had two drinks of vodka from the bottle which was found in his vehicle at the time of the arrest; that he drank a can of beer with his lunch; that he was going to San Francisco to buy a manifold for his automobile, and he found that his tank was empty and turned toward Mill Valley to get gas. He testified he did not know that the Richfield Station was in that direction, and denied that he had told Sergeant Gibbs that he was a regular customer of the station. Appellant's employer testified that he had been drinking when he reported to work.

Thus, appellant denies he was the person who accosted Linda, denies that he was the person who drove Stella to Mount Tamalpais, and denies that he was the person whose vehicle collided with that of Fernandez, against the positive identification by each of these three witnesses. He denies that he was drinking when he went to work, against the testimony of his employer. He denies that he stated that he was a regular customer of the gasoline station, against the testimony of Sergeant Gibbs that he did so state. He was not asked by counsel on either side whether he had requested Spurrell to ditch the car.

Not only was appellant's testimony contradictory to that of several witnesses, but, also, his testimony was subject to such impairment as the jury might find by reason of the fact that he had been convicted of felony three times in the matter of forgery and issuing of false checks. He presented corroboration of testimony in one particular only, namely, that of his wife and his daughter to the effect that there had been a collision between his own two vehicles, as aforesaid.

The argument of defense counsel was chiefly a "timetable" argument to this effect: that the phone call relating to the Fernandez incident had come to the sheriff's office from the ranger station at 1:05 p. m.; that the ranger had seen the green vehicle again about three minutes after he had telephoned; that, according to the ranger's testimony, it takes about 20 or 25 minutes to get from the ranger station to

Dolan's Corner; that therefore the vehicle which was seen at the ranger station would not have arrived at Dolan's Corner until 1:28 or 1:33, whereas Mauberret testified that when he first saw appellant's vehicle in the Dolan's Corner area it was "approximately 1:20." Therefore, the defense argued, the vehicle seen at the ranger station must have been a different one. Obviously, the jury did not regard the approximation of time by Mauberret as an important item, in the face of so much positive evidence produced by the prosecution. Appellant does not challenge the sufficiency of the evidence to support the conviction but contends that, because the jury in the first trial disagreed, the case must be regarded as a close one, and that the procedural errors which he claims existed must accordingly be regarded seriously. It is our opinion that the case against appellant was a strong one.

### Procedural Matters

The first trial commenced October 4, 1960, and the jury was unable to agree. Thereafter, defendant made a motion for assistance by the court by preparation of and furnishing to defendant a transcript of the first trial, by appointment of an expert to examine paint specimens and to testify concerning them, and by appointment of a private investigator for the finding of witnesses, taking of pictures, and discovery of evidence. The supporting affidavit alleged that defendant was without funds, an allegation which has not been denied at any time. The motion was denied in its entirety. On January 5, 1961, defendant renewed his motion for preparation of the transcript, with an additional affidavit that the district attorney had ordered the transcript at public expense. The court granted the motion "to extent that District Attorney make available to defendant for study prior to trial of the transcript that he has." This order does not direct that a full transcript of the earlier trial be made available but only the transcript as possessed by the district attorney, and although there is nothing in the record before us to show how much of the transcript was available to defendant, it is conceded in respondent's brief, by implication at least, that what was available to the defendant was less than the entire transcript.

During the trial, which was conducted by a judge other than the one who had ruled on the motions earlier, defendant did not at any time renew his motion for the transcript, the expert, or the investigator. At no time during the course of the trial did he inform the court that he was in any way

embarrassed in his cross-examination of the prosecution witnesses by the fact that he did not have the transcript of the earlier trial. Counsel for defendant in the second trial had represented him in the first trial. He did not state to the court at any time that either notes or memory indicated to him that a prosecution witness was testifying inconsistently with his former testimony. Although he now complains that, had he had the transcript, he would have been able to produce witnesses who had been presented by the prosecution at the first trial and who were not put on the stand at the second trial, or could have read their testimony into the record, at no time during the trial did he make this known to the court. We have found but one place in the lengthy transcript of the second trial where counsel for the defendant asked a witness if his testimony at the prior trial had not been different and this was a question put to witness Smith, who had testified that defendant was in San Rafael at 11:15. Smith conceded that the time could have been 11:25, and then came the sole question from defendant's counsel relating to the earlier trial, namely, if it was not Smith's testimony that Smith had seen Berry between 11:20 and 11:25, to which question Smith replied in the affirmative. The slight discrepancy, readily corrected by the witness, and, in fact, corrected before his attention was called to his prior testimony, is the only instance in 280 pages of testimony in which there was any suggestion by defense counsel at the second trial of testimony which differed from that given at the first trial.

Defendant moved for a new trial on the grounds set forth in section 1181 of the Penal Code and all of the subdivisions thereof, which motion was denied. The record discloses no affidavits or declarations which would inform the trial court of any disadvantage suffered by the defendant by reason of lack of the transcript.

Appellant's first contention is that it was prejudicial error to deny him a full transcript of the first trial. Between the time of the judgment in the case before us and the hearing of the appeal, there was decided by the District Court of Appeal in the Second District, Division Three, the case of *People* v. *Hollander,* 194 Cal.App.2d 386 [14 Cal.Rptr. 917], in which it was held prejudicial error "[u]nder the circumstances of this case" not to order a transcript of the prior trial for an indigent defendant. We think the case is distinguishable in the following respects: (1) In the case before

us, the same counsel had appeared for defendant in the prior trial, but in the *Hollander* case the defendant represented himself at the first trial. The court, in its opinion, pointed out (p. 395) that Hollander's counsel was without any knowledge of what had happened at the prior trial, other than a short extract from one witness' testimony. (2) Hollander not only made his motion prior to the second trial but repeated it after the jury had been empaneled, stating that there were many discrepancies between the testimony of the People's witnesses at the prior trial and at the preliminary hearing. Hollander repeatedly said that he desired the transcript for the purpose of impeaching witnesses of the People, had attempted to impeach them, and was frustrated in his efforts because of the lack of the transcript. (3) In *Hollander,* the trial judge denied the motion, stating, erroneously, that he was without jurisdiction to order the transcript. Section 69952 of the Government Code clearly gave him that jurisdiction. In the case before us, there is nothing to show that, had the motion been made before the trial judge, he would not have exercised his jurisdiction in favor of the motion. (4) In *Hollander,* the trial judge, having appointed counsel when defendant requested such appointment after the prosecution had rested, stated that the cross-examination of the prosecution witnesses "was very brief, and I don't think it was gone into as carefully as it should have been." [194 Cal.App.2d at p. 395.]

Whether or not Hollander made a motion for a new trial does not appear, but in the case before us such motion was made and could have been supported by affidavits showing wherein defendant had been prejudiced.

Under all the circumstances, we have before us nothing to show that appellant was prejudiced by lack of the transcript, either by way of frustration of impeachment of prosecution witnesses or by inability to present testimony of witnesses who testified at the first trial and were absent at the second. There is before us nothing whatever to show which of such witnesses' testimony would have been desired or what the content of the testimony would have been. Although, lacking the transcript, counsel might not know exactly what testimony was unavailable to him, surely his memory, and that of the defendant himself, would enable him to present to the trial court, and by appropriate inclusion in the record, to this court, something in the nature of an offer of proof.

We find, likewise, that there was no error in denying

appointment of an expert to examine paint samples and to testify. The application made by the defendant before the second trial gave no specific reason for such an appointment, such as that the expert witness Burd, who had been called by the People, was unqualified or was contradictory or deficient in his testimony at the first trial, nor did the affidavit charge the expert with bias, although it did relate that he was connected with law enforcement. No proposed expert was named, nor was there any statement of any preliminary interview with any expert, which might inform the court of what assistance to the judgment of the case an appointment of another expert might be. Furthermore, during the trial, when the court could observe the witness Burd and the substance of his testimony, there was no renewal of the motion. It is of some significance that the witness Burd would not go so far as to testify that the paint samples on the Berry and Fernandez vehicles were identical, although he did state positively that the samples from the two vehicles owned by the defendant were not of the same paint. It would have been a more direct assistance to the prosecution to have established the identity of paint from the Fernandez and Berry vehicles. The witness Burd was cross-examined as to the reason for his conclusions and as to his experience in testifying. He conceded that usually he was called by the prosecution, but stated that there have been a number of occasions when he testified for the defense. There was no affidavit or declaration against Burd's testimony at the motion for new trial.

The matter of appointing an expert, to be paid by public funds under the provisions of section 1871 of the Code of Civil Procedure, is discretionary with the court. (*People* v. *Gorg*, 45 Cal.2d 776, 780 [291 P.2d 469]; *People* v. *McCracken*, 39 Cal.2d 336, 350 [246 P.2d 913]; *People* v. *Rickson*, 112 Cal.App.2d 475, 479 [246 P.2d 700]; *People* v. *Porter*, 99 Cal.App.2d 506, 510 [222 P.2d 151].) We find no abuse of that discretion.

The contention of appellant that the court should have appointed an investigator to help his attorney in preparation of the defense and to search for witnesses, named and unknown, has no merit. We know of no statute, and none has been pointed out to us by counsel, which would justify expenditure of public funds for this purpose. It has been held that it is not a duty of public officials to help a defendant to locate witnesses whose names or whereabouts are unknown.

(*People* v. *Bailey,* 91 Cal.App.2d 578, 580 [205 P.2d 418] : *People* v. *Talman,* 26 Cal.App. 348, 350 [146 P. 1063].)
Judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied January 26, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 7, 1962. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.