[Crim. No. 33. Fifth Dist. July 24, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. TONY ERNEST
SULLIVAN, Defendant and Appellant.

Tony Ernest Sullivan, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Barry L. Bunshoft, Deputy Attorney General, for Plaintiff and Respondent.

BROWN, J.—The defendant was charged in Fresno County with two counts of passing forged instruments—the first count for $31,626, and the second count in the sum of $18,600. He was also charged with two prior convictions—one for grand theft for which he served a term in San Quentin; and an insufficient funds conviction in Kern County for which he served a term in Los Padres. He was arraigned, and pleaded "Not guilty" to both counts.

At the trial on October 30 and 31, 1961, he waived his right to counsel, instead elected to represent himself. He had previously dismissed two court-appointed attorneys, Messrs. Ara Ohanesian and Tom Okawara. The jury found him guilty of both counts. He waived referral of the case to the Probation Office, and was thereupon denied probation and sentenced to imprisonment in the California State Prison. Defendant has appealed from the judgment of conviction.

The defendant attempted to open two checking accounts and two savings accounts at the State Center Bank in San Joaquin, tendering for deposit two checks in the amounts hereinabove referred to drawn on the Pismo Beach Branch of Bank of America, where he had no account. He was informed that the State Center Bank would have to send the checks to the Pismo Beach Branch of Bank of America for collection before he could draw checks on the accounts, and the bank manager gave him a collection receipt for each check. Immediately prior to his attempting to open these accounts he had given a $3,700 check drawn on the State Center Bank to an automobile agency at Arroyo Grande, and a check to his landlady for $510 on November 14, 1960, which she tried to collect on November 23, 1960.

The checks for $31,626 and $18,600, signed with the name "H. E. Ward," as maker, were forwarded for collection and ultimately were returned, marked "Unable to Locate Account." Said H. E. Ward and the defendant had conducted business relations years ago for a period of three months. Mr. Ward had had an account at the Pismo Beach Branch of Bank of America as administrator of his grandfather's estate in 1937, and a personal account up to 1951 or 1952.

On November 21, 1960, because of information received from the automobile dealer about the $3,700 check, the Chief

of Police of Arroyo Grande found defendant in Morro Bay and questioned him there. Then he placed defendant under arrest for investigation of fictitious checks. The defendant told the chief that he had deposited certain checks in San Joaquin, produced the collection receipts, and claimed that he used the name of Ward as an alias. The chief having taken defendant to the County Jail in San Luis Obispo, booked him and while in the restroom, the defendant flushed the two collection receipts down the toilet.

How the appellant was going to cover the checks which were deposited in the State Center Bank drawn on the Pismo Bank is not clear. There is no evidence of his intent to deposit the alleged cashier's checks in the Pismo Bank except that he said he planned to put these cashier's checks in an account which he intended opening at that bank.

In the trial defendant admitted signing the name of Ward to the two checks, but argues that since he used the name "H. E. Ward" as an alias only, he did not forge the signature of the true H. E. Ward. He said that he had used the name "Ward" since 1939 to prevent his estranged wife from attaching his bank accounts. He testified that he had an account in an Arizona bank under that name; that he had had two cashier's checks in his possession at the time he was arrested and that what he flushed down the toilet at the San Luis Obispo County Jail were the two cashier's checks. Defendant refused to tell the court and the jury the name of the bank of origin of these cashier's checks, or the amounts thereof.

In reviewing defendant's opening brief, which is really not a brief at all, we note that he makes many claims. He states that the judge failed to inform the jury that he was charged with forgery with intent to defraud Mr. Ward and others; that he was denied witnesses in his behalf; that he was denied a copy of the transcript of a previous partial trial which he wanted in order to show that certain of the witnesses were committing perjury, but that he now has a copy of the portion which was transcribed; that the information sent to the Department of Corrections was false; that he wanted the full statement that he gave to Mr. Smith and Mr. Clapp in front of Mr. McKillop, a court reporter in Fresno, read to the jury, but that only picked parts of it were read to "dirty the friends of the jury." He further states in his brief that he had a sanity hearing against his will; that he was found sane; that Municipal Judge Hoffman told him he would dismiss the

charges providing defendant would pay what they asked him to; that he was arraigned again before Municipal Judge Andreen; that he was refused his witnesses; that he was taken before Superior Judge Popovich and charged with two prior convictions of which he claims he was falsely convicted to which he pleaded "Not guilty" but that the judge falsely entered in the record that he made a plea of "Guilty" to these prior convictions; that he was refused his witnesses in the trial before Superior Judge Kellas; that he was illegally sent to Atascadero State Hospital; and that he was falsely and illegally represented by attorney Tom Okawara. He also wants the department to have all of the records brought before our court.

Many of defendant's complaints relate to matters outside the record before us. Others fail to present issues which may be determined on appeal. They are, therefore, devoid of merit and do not justify discussion. The charges of error which we will consider may be synopsized as follows: (1) that the trial court erred in not instructing the jury that "intention to defraud" is an element of the crime of forgery; (2) that the trial court abused its discretion by refusing to subpoena certain witnesses requested by defendant; (3) that the trial court abused its discretion in denying defendant a copy of the transcript of a previous partially completed trial; (4) that the defendant was prejudiced by improper conduct of counsel; and (5) that the defendant did not admit his prior convictions.

The reporter's transcript shows that the clerk of the court did properly read to the jury the information on both charges, each of which stated that the defendant wilfully and unlawfully, with intent to defraud the parties, passed a forged instrument.

█ 1. *Review of Claimed Error in Trial Court's Giving Instructions.* With regard to defendant's contention that the trial court failed to correctly instruct the jury on the element of intent to defraud, the same will not be reviewed by the appellate court unless these instructions are included in the record on appeal. (*Southern Pacific R. R. Co.* v. *Superior Court,* 105 Cal. 84 [38 P. 627]; *Thomas* v. *Laguna,* 113 Cal App.2d 657, 660 [248 P.2d 929].)

Rule 33 of the Rules on Appeal* covers this point. The defendant's notice of appeal contains no request nor motion to augment the record. █ As this record fails to contain

*Now California Rules of Court, rule 33.

any instructions, it will be presumed that the jury was fully and fairly instructed by the trial court and that there was no error in giving the instructions. (*Alexander* v. *McDonald*, 86 Cal.App.2d 670, 671 [195 P.2d 24].)

2. *Defendant's Witnesses.* At a hearing prior to the trial, defendant requested the issuance of a subpoena for a Ford dealer from Arroyo Grande. This subpoena was issued and the Ford dealer did testify. During the trial defendant requested a second witness to be subpoenaed, his landlady, and the court ruled that the landlady's testimony was not relevant to the issue of intent to defraud, but did order the district attorney to issue the subpoena. This witness did not testify as defendant did not know her address and the district attorney could not locate her. It is not the duty of the district attorney or public officials to locate, or assist an appellant in locating, a witness whose address is unknown to appellant. (*People* v. *Bailey*, 91 Cal.App.2d 578, 580 [205 P.2d 418].)

Later on, defendant wanted a subpoena issued addressed to an F.B.I. agent who was supposed to have given him certain advice as to what to do about turning the money over to the F.B.I. or that defendant did not have to turn the money over, and his request for a subpoena was refused by the court on the grounds that this testimony would be irrelevant. ''The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud.'' (*People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065]; *People* v. *Hawkins*, 196 Cal.App.2d 832, 837 [17 Cal. Rptr. 66]; Pen. Code, § 470.) Testimony which might indicate that defendant had sufficient funds to cover the check in question is irrelevant to the issue of false making with intent to defraud; and testimony that any third party advised him not to disclose the whereabouts of alleged funds, the third party having no personal knowledge that the funds existed, is even more irrelevant. This would have been an error only if defendant could show that the witnesses could offer relevant and material testimony. (*In re Finn*, 54 Cal.2d 807 [8 Cal. Rptr. 741, 356 P.2d 685].) There is nothing in the record to show that defendant requested additional or further subpoenas or had any refusal of the same by the court, nor did he ask for any other witnesses. Defendant claims that he was refused his witnesses but that the district attorney subpoenaed these same witnesses

for the prosecution. If the witnesses wanted by defendant were before the court even though subpoenaed by the district attorney, this naturally would not keep defendant from using the same witnesses or cross-examining them. He cross-examined all witnesses except the court reporter, McKillop, who read the statement made by defendant to the district attorney. He called no witnesses of his own.

Defendant states that he had demanded the full statement that he gave to Mr. Smith, the Deputy District Attorney, prior to the trial, of which only portions were read to the jury by Mr. McKillop, the court reporter. At no place in the record does it show that defendant requested the entire statement be read, and in fact, after the portions of the statement were read to the jury the District Attorney, Mr. Martin, stated that Mr. McKillop was "Your witness," and the defendant answered, "He is your witness." The court asked, "He may be excused?" and defendant answered, "Yes." Here, the defendant had his opportunity to cross-examine Mr. McKillop as to what portions of the statement, if any, were omitted and could have requested the court to read the portions if any were left out. Not having done so, it is too late for him to raise the question in this court.

3. *Right to Transcript of Previous Partially-Completed Trial.* The first trial in this matter was never completed, the reason for which is not clear. However, it appears that during the course of that prior partial trial, defendant changed attorneys. In order to enable his new attorney, Mr. Okawara, to proceed, a transcript of the trial proceedings to the time of the substitution was prepared and a copy thereof given to defendant. After commencement of the trial which gave rise to this appeal, defendant requested a transcript of the remaining portion of the prior partial trial for his use in impeaching testimony of Chief of Police Richardson, a prosecution witness. The court advised him that the reporter's notes had never been transcribed, there having been no reason to do so, and that the portion which had been transcribed was prepared as a courtesy to Mr. Okawara. Therefore, the court was unable to furnish the defendant with a printed copy of the chief of police's testimony but did find the court reporter and had him read the direct, cross, redirect and recross examinations of the chief to the jury. His testimony was substantially identical at both trials. On the completion of the reading of the testimony, the court asked, "Do you have any further questions of this witness?" and also advised

defendant that he could comment on the testimony in his argument. The defendant answered, "Well, the jury heard it different and you brought out the fact that it is his testimony that he testified." The examination of the court reporter ended, and defendant at this time had his opportunity to find out what portions, if any, had been left out. He cannot now ask on appeal that the record be augmented by statements which were not before the court in the trial. The defendant cross-examined Chief Richardson, after the reading of the previous testimony of the chief by the court reporter to the jury, but did not elicit any further information from him concerning said testimony.

In *People* v. *Hollander,* 194 Cal.App.2d 386 [14 Cal.Rptr. 917], at page 393, quoting from *Preston* v. *Municipal Court,* 188 Cal.App.2d 76, 81 [10 Cal.Rptr. 301], the court said: " 'Government Code section 69952 provides that the furnishing of free transcripts is entirely discretionary. . . .' " But *Hollander* held that the refusal of the trial court to order a transcript of a prior trial demanded by the defendant for the purpose of impeaching witnesses was an abuse of discretion constituting prejudicial error where defendant was an indigent person, was represented by counsel other than the attorney who represented him in the first trial, and his request was made more than one month prior to the commencement of the second trial, in ample time to have the transcript prepared. In the present case, however, the request was not made timely but after commencement of trial. Had it been granted, the court would have been required to postpone the matter to give the reporter time within which to transcribe his notes, to the detriment and inconvenience of the court's own calendar, the jurors, counsel and witnesses. There was no abuse of discretion in this respect. Moreover, there is nothing in the record "to show that appellant was prejudiced by lack of the transcript, either by way of frustration of impeachment of prosecution witnesses. . . ." (*People* v. *Berry,* 199 Cal.App.2d 97, 104 [18 Cal.Rptr. 388].)

4. *Alleged Misconduct of Counsel.* Defendant states that the district attorney was a disgrace to our American laws because he allowed a witness to perjure himself. He makes no reference to the record on this point, and our own search of the entire record discloses no misconduct. ■ Where the alleged misconduct of counsel for the prosecution is not included in the record or transcript, it cannot be so reviewed. (*Mudrick* v. *Market Street Ry. Co.,* 11 Cal.2d 724 [81 P.2d

950, 118 A.L.R. 533].) Defendant's notice of appeal contains no request nor did he later move to augment the record and thus, the defendant's contention cannot be considered by the reviewing court on appeal. Defendant made no objection during the trial as to counsel's argument; thus, it is raised for the first time on appeal. (*People* v. *Wein,* 50 Cal.2d 383, 396 [326 P.2d 457].)

5. *Prior Convictions.* Defendant claims that he did not admit either of the prior convictions but that the court falsely entered into the record that he did admit such prior convictions. The clerk's transcript states the prior convictions charged and proved or admitted, as follows:

| "Date | County and State | Crime | Disposition |
|---|---|---|---|
| "12/20/39 | Kings Co., Calif. | Grand Theft | Calif. State Prison, San Quentin |
| " 5/22/56 | Kern Co., Calif. | Ins. Funds | Calif. Men's Colony, Los Padres" |

The reporter's transcript does not contain a record of the arraignment proceedings. However, the clerk's transcript is certified to be true and correct by the judge of the superior court of Fresno County. The minute order states that defendant orally and in open court admitted the first and second prior convictions. Possibly what defendant means in his brief in which he states "I kept on pleading that I was falsely convicted of them" is that he thinks he had another choice in his plea—"Not guilty," "Guilty" or "Falsely convicted." There are only two choices defendant could take—that he was either convicted of a crime or not convicted. If he stands silent, such is equivalent to a "Not guilty" plea. (Pen. Code, §§ 1025 and 1093.) But here, he admits his convictions but says that he was falsely convicted. The fact of conviction is sufficient and neither the trial court nor this court may inquire into the merits of the proceedings underlying a conviction.

Rule 52 of the Rules on Appeal* provides: ". . . it shall be presumed in the absence of proceedings for augmentation that [the record on appeal] includes all matters material to a determination of the points on appeal."

Defendant's contention is that not having admitted his priors, he was entitled to have this issue determined by the jury, but the defendant's admission in his brief that the court

*Now California Rules of Court, rule 52.

entered an admission of prior convictions in the record and the lack of his motion that the jury should find whether he had any previous convictions seems to waive his contention that he did not admit his priors. In fact, defendant did admit his prior convictions at the trial. When asked whether the 1939 conviction for embezzlement was the only felony of which he had been convicted, he said, "No, that is not the only one." As to the question, "What is the other one?" he stated, "I was convicted in 1956 for a check on a repair bill I made for a truck." ▮▮▮ Defendant's decision voluntarily to become a witness in his own behalf justified the prosecution's eliciting from him on cross-examination by way of impeachment that he had suffered prior felony convictions. (*People* v. *Youders,* 96 Cal.App.2d 562 [215 P.2d 743]; *People* v. *Jeffries,* 47 Cal.App.2d 801 [119 P.2d 190]; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Weaver,* 56 Cal. App.2d 732 [133 P.2d 818]; Code Civ. Proc., § 2051.)

In fairness to the defendant we have carefully considered each argument made in his brief, even though those arguments were not supported by case authority. Many of his claimed points relate to matters which, had he been represented by counsel during trial, would have been cured had they been called to the attention of the court. ▮▮▮ However, defendant competently and knowingly refused the aid of counsel and elected to represent himself, thereby assuming for all purposes, including this appeal, the qualifications and responsibilities concomitant with his role of representation. (*People* v. *Green,* 191 Cal.App.2d 280 [12 Cal.Rptr. 591]; *People* v. *Harmon,* 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Mattson,* 51 Cal.2d 777 [336 P.2d 937].) To the same effect are *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001]; *People* v. *Pearson,* 150 Cal.App.2d 811 [311 P.2d 142]; *People* v. *Williams,* 174 Cal.App.2d 364 [345 P.2d 47]; and *People* v. *Duncan,* 175 Cal.App.2d 372 [346 P.2d 521]. He is therefore bound by the record which he has brought to us, and that record discloses no prejudicial error.

The judgment is affirmed.

Stone, Acting P. J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.

Appellant's petition for a hearing by the Supreme Court was denied September 12, 1962.