[Crim. No. 11431.   Second Dist., Div. Five.   June 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. BOBBY SUBER, Defendant and Appellant.

Sheldon Rosenfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—After a court trial defendant was found guilty of a violation of section 11501 of the Health and Safety Code. On January 17, 1963 criminal proceedings were adjourned under then section 6451 of the Penal Code—now section 3051 of the Welfare and Institutions Code. On May 26, 1965 he was returned from the narcotic rehabilitation center for further criminal proceedings. On July 14, 1965 his motion for a new trial was denied and he was sentenced to the state prison for the term prescribed by law. He then appealed.

*Facts.*

On April 4, 1962 Welsey E. Toles was an undercover officer of the Los Angeles Police Department. At about noon of that

day Toles and one Dudley met defendant at the corner of Kenwood and Adams. There was a conversation. Defendant said he was trying to score. Dudley said: ''That is what we are trying to do.'' Defendant said ''We might as well try together.''

Defendant and another person (John Doe) then entered Toles' car. Defendant directed Toles to 1186 West 37th Drive. Toles gave defendant a ten dollar bill. Defendant got out of the car and went into an apartment. He returned in about ten minutes. He said he had to make a telephone call. 'This is almost a sure thing; wait for my man.'' Dudley asked defendant: ''Well, how is the dude's dope?'' Defendant said: ''I don't know how it is. I am not going to guarantee somebody else's dope. I am going to take a chance, though.''

Hunter then came out of the house, entered the car and directed Toles to Normandie and Adams. The party, by then, consisted of Toles, Dudley, defendant, John Doe and Hunter.

At this point Toles' testimony becomes somewhat cryptic and we therefore set it forth verbatim: ''At that time we met two other people, a person—THE COURT: Who is 'he'? Two other people; who do you refer to by 'he'? THE WITNESS: Mr. Hunter is met—all of us actually met two other people. At this time we engaged in conversation. A person known to me as Smiley said, 'If you are going to cop some narcotics, let me ride with you because I am going to the pen tomorrow and I need some narcotics because I am feeling bad.' Mr. Hunter, in the meantime, was making a telephone call. Incidentally—I am sorry—Now Mr. Suber handed Mr. Hunter some money. I had assumed it was the money I handed him prior to us getting to Normandie and Adams. At this time. . . .''

Toles could not see exactly whether defendant handed Hunter a ten dollar bill or several bills, although it appeared to be one bill.

At Normandie and Adams Dudley said that there were too many people in the car, they had to ''get out of here.'' Hunter then directed Toles to the twenty-hundred block of Rimpau. Hunter left the car, went down a hill and returned in about five minutes with another stranger. After some inconsequential conversation, Hunter got back in the car and handed something to Dudley who, with one sweeping motion, handed it to Toles. When it landed in Toles' hand the object turned out to be a green balloon which, later on, was found to contain heroin.

Toles' testimony was somewhat shaken on cross-examina-

tion. In view of the contentions on appeal we will list the matters developed by defense counsel:

1. At the trial Toles said he met defendant at 12:05 p.m. Before the grand jury he had said 12:15 p.m.

2. Before the grand jury he had estimated defendant's age as being between 30 and 35. At the trial he thought it was between 28 and 33. Before the grand jury he had thought defendant's height was 5' 7", at the trial he thought it was between 5' 4" and 5' 6".

3. Defendant was not immediately arrested after the offense, because Toles did not want to "blow his cover." The money was handed by defendant to Hunter when Hunter came out of his apartment at 1186 West 37th Drive, not at Normandie and Adams as he had testified on direct and also at another trial where Hunter was the defendant. Defendant had a tattoo on his arm at the time of the transaction, but Toles failed to so indicate in his notes.

Defendant took the stand. He denied having been present at the events described by Officer Toles. He also denied having told Toles sometime after his arrest that he remembered the occasion but did not receive any money from him.

In rebuttal Toles testified that defendant did make such a statement.[1]

### Sufficiency of the Evidence

Defendant's only contention on appeal is that the evidence is insufficient to support the finding of guilt. The recital of the facts demonstrates, however, that the evidence was more than adequate to support the finding on the theory that defendant aided and abetted a sale by Hunter. (*People* v. *DeJean*, 249 Cal.App.2d 220, 227 [57 Cal.Rptr. 211].)

Defendant presents certain factual arguments. These fail, in part, because they are addressed to the wrong court and in part because they rest on a misreading of *United States* v. *Jones*, 308 F.2d 26.

*Jones* was a prosecution under section 174 of title 21 of the

---

[1] The trial took place in 1962. There is no evidence of any advice of constitutional rights preceding this conversation and, of course, there was no objection at the trial; nor is there any assignment of error on appeal. We have no reasonable doubt that the error did not contribute to the result. (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]: *People* v. *Talley*, 65 Cal.2d 830, 840 [56 Cal.Rptr. 492, 423 P.2d 564].) Everything depended on the credibility of Officer Toles, compared to that of defendant. If the trial court had any doubts concerning the officer's veracity it surely realized that nothing is easier to fabricate than an oral admission.

United States Code which is copied in the footnote.[2] The evidence indicated that Jones facilitated a sale of narcotics from one "Big Charlie" to Brown, a narcotic agent. At no time was Jones in possession[3] of the narcotic. He was what the Court of Appeals called a "casual facilitator." In reversing his conviction the court recognized that an aider and abettor was liable as a principal (18 U.S.C. § 2) but the crime defined by section 174 of title 21 of the United States Code requires the illegal importation of the drug in question and knowledge thereof on the part of the defendant. The second paragraph of section 174 creates a presumption of illegal importation and knowledge from possession on the part of the defendant. The question in *Jones* was whether or not in the absence of other evidence of illegal importation and knowledge thereof the conviction of an aider or abettor who never possessed, actually or constructively, could be supported by the presumption of the second paragraph. For reasons which we need not go into, the court held that it could not.

It is obvious that *Jones* must be read in the light of the requirements of the federal statute which are not found in section 11501 of the Health and Safety Code. It is, therefore, not in point and does not affect the validity of cases such as *People* v. *DeJean, supra,* and others on which it relies.

The judgment is affirmed.

Stephens, J., and Frampton, J. pro tem.,* concurred.

---

[2]"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

[3]The court found that there was neither physical possesion nor the constructive possession which could have been found to exist if the defendant had such ". . . a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer as a matter of course. . . ." (*Ibid.,* p. 30.)

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.