# COFFEY v. STATE.

No. A-11310. May 23, 1951.

(235 P. 2d 546.)

On Rehearing July 25, 1951.

Second Petition for Rehearing Denied Sept. 19, 1951.

328

Robert W. Booth, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, 1st Asst. Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error Odie W. Coffey, defendant below, was jointly charged by complaint with Roy Raymond May on April 28, 1949, in Rogers county, Oklahoma, with the crime of the larceny of an automobile, said automobile being a 1941 Plymouth sedan, Texas License, the personal property of C. M. Hopper. Appearing before W. O. Boyd, justice of the peace, on said complaint, the record shows "they waived everything, and they were both told of the charge against them and advised of their constitutional rights", and that each of the said defendants entered pleas of guilty to said charge. Thereafter their bonds were set at $1,000 and they were bound over to the district court of Rogers county, Oklahoma.

On May 2, 1949, the defendant Odie W. Coffey was charged jointly with said Roy Raymond May by information in the district court of Rogers county, Oklahoma, with the larceny of the aforesaid automobile. On said 2nd day of May, 1949 said matter came on in open court on arraignment, and said defendants entered their pleas of guilty. Thereafter, it appears the defendants were sentenced by the trial court to terms of 5 years in the penitentiary under direction of commitment that the defendants be transported to the penitentiary and the warden was directed to confine the said defendants Coffey and May in accordance with said judgment. The judgment and sentence as to Odie Coffey appears in substance in the following form towit:

"The prisoner, the above named Odie Coffey, defendant, being personally present in open court and having been legally charged by information for the crime of larceny of an automobile and arraigned, and said defendant having been fully advised by the court of his constitutional right to be represented by counsel; and of his right to a trial by jury, and of his right of time to plead, and having waived the same entered herein his plea of guilty as charged in said Information and being asked by the court if he had any legal cause to show why judgment and sentence should not be pronounced against him, and he giving no good reason in bar thereof, it is the judgment of the court that the defendant is guilty.

"It is therefore considered, ordered, adjudged and decreed by the court that the said Odie Coffey be confined in the State penitentiary at McAlester in the State of Oklahoma for the term of five years, for said crime by him committed, said term of sentence to begin at date of incarceration * * *.

"It is further ordered, adjudged and decreed by the court that the Sheriff of Rogers County, State of Oklahoma, transport said Odie Coffey to the said penitentiary at McAlester in the State of Oklahoma and that the warden of said penitentiary do confine and imprison the said Odie Coffey in accordance with this judgment * * *.

"Received the within Writ on the 4 day of May, 1949, and executed on the 4 day of May, 1949, by delivering Odie Coffey to Okla. State Penitentiary at McAlester, Okla."

The case-made discloses there was no attack on the sufficiency of the information, that the trial court had jurisdiction of the defendant's person and authority under the law to pronounce the judgment and sentence. Moreover the case-made discloses there was no motion for new trial filed at the proceedings on the plea of guilty, or permission granted by the trial court so to do within 30 days after judgment, and before entry of judgment and sentence as provided in Title 22, § 954, O. S. A. 1941. It further appears that the defendant was delivered to the custody of the warden of the penitentiary on May 4, 1949, in whose custody he remained for 4 months and 17 days before this proceeding to vacate the judgment and sentence was instituted. The trial court, after evidence was heard on the motion to vacate the judgment overruled the same, and this appeal has been perfected for said Odie Coffey from said order. The judgment does not appear void on its face. The Attorney General contends that under such conditions the trial court was without jurisdiction to vacate the judgment and sentence and cites in support thereof Tracy v. State, 24 Okla. Cr. 144, 216 P. 941, wherein the rule as relied upon by the state is set forth in syllabus 3 as follows:

"Where judgment has been rendered and the defendant has suffered the penalty pronounced in the judgment in whole or in some substantial part, even during the term, the authority of the court rendering the judgment is at an end, and the trial court is without jurisdiction to modify, suspend, or otherwise alter the judgment, except to set aside a judgment void on its face as shown by the record."

Moreover, he relies on Ford v. State, 80 Okla. Cr. 37, 156 P. 2d 633, and other authorities cited therein. But these cases are not controlling herein, for the questions raised therein were on a motion in arrest of judgment or on a motion to withdraw plea of guilty followed by a motion for new trial, both of which were interposed after judgment. The proceeding and the relief sought in the last 2 hereinbefore mentioned cases is not the same as sought in the case at bar, for herein, even though the judgment is not void on its face, the error complained of is fundamental. Herein the error complained of is the denial of the defendant's constitutional right to the aid of counsel. If the contention is true, under such conditions the trial court lost jurisdiction and was therefore without jurisdiction to pronounce the judgment and sentence herein. The matter being called to the trial court's attention by motion to vacate the judgment and within the 6 months time allowed for perfecting an appeal, Title 22, § 1054, O. S. A. 1941, it was the duty of the court to inquire into the validity of its judgment, for such matter may be raised even at any time before the final completion of the judgment and sentence of the lower court. Ledgerwood v. State, 6 Okla. Cr. 105, 116 P. 202. And such questions may be raised in the trial court on motion to vacate the judgment if within the time for perfecting an appeal. But, of course, in order to perfect appeals involving errors of law arising in the trial such errors must be incorporated in a motion for new trial and submitted to the trial court before judgment. Ledgerwood v. State, supra. The trial court having made inquiry in the case at bar and having overruled the motion to vacate the judgment, the sole question, therefore, is, Does the record support the trial court's action or does it disclose an abuse of discretion? An application to vacate and set aside a judgment and to withdraw a plea of guilty after judgment of conviction thereon is addressed to the sound discretion of the trial court. Moose v. State, 52 Okla. Cr. 206, 4 P. 2d 694. Such power is inherent in all courts of record. Bean v. State, 27 Okla. Cr. 228, 226 P. 115.

We are of the opinion that the theory that the trial court may have lost jurisdiction to pronounce judgment and sentence by denying the defendant his constitutional right to aid of counsel, does not find support in the record. The motion does not allege nor the facts support the proposition that the defendant was incapable adequately of making his own defense because of immaturity, youthfulness, ignorance, feeblemindedness, illiteracy or the like. Ex parte Cornell, 87 Okla. Cr. 2, 193 P. 2d 904; Ex parte Stinnett, 71 Okla. Cr. 184, 110 P. 2d 310.

Moreover, the record of the trial court's statement at the hearing on the motion supports the fact the defendant was not denied his right to aid of counsel, but sustains the proposition that the trial court advised him of his right to aid of counsel. The trial court's statement is as follows, towit:

"The Court: Let me make this statement. When the defendants, May and Coffey, were brought before the Court, the Court distinctly remembers telling and advising both of them, and asking them if they had counsel, and they informed the Court they did not have counsel; I asked them if they wanted counsel and they said they did not, and I then told them it was the duty of the Court to obtain counsel for them if they desired, and they said they did not want counsel obtained.

"I told them then that they had twenty-four hours in which to plead, or they could waive that time and enter a plea at that time if they cared to; they both stated they desired to waive the time and enter a plea, and I asked them what their plea was, and they both said, 'guilty.'

"When the sentence for a felony was entered, I asked them about what happened, and they told me they had stolen one car; the first car was wrecked and then they stole another car, and I remarked about that. I asked them also whether either one of them had had any previous time record, and I believe they told me they had not. I remember asking either the sheriff's office or the county attorney's office if they had any report on either of the prisoners, and I believe I was informed that they had no report, that they couldn't find any previous record. I may have asked the county attorney's office whether it had any recommendations, but I have no distinct recollection about that, but that is usually my procedure when a prisoner pleads guilty, and I believe—it is my recollection, that I told both of the defendants that had they only stolen the first car and that would be the first offense, that I would probably be lenient, or show some leniency, or perhaps the Court would defer the date of sentence, but in view of the fact that they immediately stole the second car, seemingly they had started out on a career of crime, and that is why I gave them a sentence of five years. I do not know of any conversation that was had between the sheriff's office or either of the prisoners, or of any promises if any, in order to get them to plead guilty. I make this statement for the record to show the Court's position. I didn't know either one of the parties."

Christine Gibbs, the county judge's stenographer, was called as a witness by Mr. Booth, counsel for the defendant. She testified she had seen the 2 defendants and had taken their statements. She was asked what sort of statement she took from Coffey and May, and she replied "about them coming to Tulsa and running this car off the road" and "got another car from Catoosa and came to this place". She never gave any testimony at all in regard to the defendants complaining they had been denied aid of counsel. She did, however, testify that they seemed to be under the impression they would get about a year in the penitentiary. Such impression however is contrary to the reason expressed by the trial court in the foregoing statement as to why he gave them 5 years in the penitentiary.

Mr. Robert L. Boone, policeman of Claremore, testified he arrested the defendants. He stated that he delivered them to the sheriff. He said the de-

fendants declined to talk and the Sheriff said "we will leave them alone for a day or two." He testified this was done and thereafter they decided to confess. He denied specifically the sheriff threatened them with a sentence in the penitentiary. He further said that neither of the defendants asked for an attorney or were advised they could have one by either the sheriff or himself. He stated the defendant Coffey wanted to write a letter which he was permitted to do and the letter was addressed to a Tulsa milk company. In response to the question if they were advised a plea of guilty would make it easier on them, he said, "No, there was no threats or promises" made to obtain the confession.

Ralph Keith, Coffey's brother-in-law, was called on behalf of the defendant and testified he had been employed by the Carnation Milk Company in Tulsa as had the defendant Coffey. It was on the advice of the milk company he said that on April 30, 1949, he came to Claremore to see Coffey. On his arrival he went directly to the jail and was granted permission to talk to Coffey. He said Coffey did not say anything about his guilt or innocence. He stated positively there was not discussion about an attorney. He said he told Mr. Bryant of the sheriff's office that he did not believe Coffey was guilty and asked him if he thought an attorney would help and he replied "No". He said that if he had been advised to get an attorney he would have done so because he was in the family.

Mr. Bill Bryant, the sheriff, was then produced in support of the motion. He said he did not recall Mr. Keith discussing the question as to Coffey's getting an attorney but if he did he said "it was entirely up to him, that we did not advise on attorneys". He testified he remembered telling Mr. Keith that there was a more serious charge at Tulsa against the boys than they had against them in Claremore, that there was a hold order on them from Tulsa. He denied emphatically that he told either Coffey or May that on a plea of guilty they would get a year in the penitentiary.

Mr. L. E. Armiston was called as a witness by the defendant. He stated he was sales manager for the Carnation Milk Company, and that at the time defendant committed the alleged crime he was employed by his company, and said the defendant came from a good family, otherwise his evidence was hearsay. It is hearsay because it related to what Coffey's landlord had said concerning Coffey's arrest, his communication with Mr. Ernie, the general manager, and his communication with Mr. Keith who went to Claremore to assist Mr. Coffey. In substance it was to the effect that Coffey stated that he had told Mr. Ernie that he did not think charges would be preferred, that the state did not have sufficient evidence and Coffey would be released. (In this connection it should be remembered that not even Keith testified to such in support of the motion.) He further testified he later talked to Coffey. He stated he had no attorney, he just pleaded guilty. He said in a telephone conversation with Coffey he asked him why he didn't have an attorney and said about this time he was disconnected. He said he could not get in contact with Coffey after that. He further stated he conversed with Mrs. Christine Gibbs at a later date. He said he asked her if she thought if Odie should have plead guilty. She said it would be useless to do otherwise, and then she made the statement in her opinion, that Odie plead guilty for he thought that he wouldn't receive more thon one year.

Roy Raymond May made an affidavit in words and figures as follows, towit:

"On this the 4th day of August, 1949, and of my own free will and accord, and without duress of any kind, I, Roy May, Reg. No. 49991, do make the following statements:

"I met Odie Coffey who is now presently incarcerated in the Oklahoma State Penitentiary, on the night of April 27, 1949, in the Gay Nineties Bar about

11:00 PM located in Tulsa, Oklahoma. We had a few beers together and we started talking about going to Indiana, and I, Roy May, stated that I was going to Arkansas and I offered to take Odie Coffey as far as I was going. Then Coffey planned to hitch-hike on to Indiana, where he planned to visit his mother. The trip was to be made in a 1949 Lincoln Sedan. When Coffey asked me where I got this car I replied, 'There are lots of things people don't know about me,' I was driving and turned the car over and when this happened I said, 'Run like Hell, this car is hot.' This is the first time Coffey knew the car was stolen. We separated at that time, and in a short while, I got a 1941 Plymouth and proceeded on my journey passing Coffey on the highway. I backed the car up and he said that he would get in and ride to the next town where he wanted out. We were both picked up by the Civil Authorities, just as we arrived into Claremore, which was just a few miles from where I picked Coffey up."

Mr. Booth, counsel for the defendant, then read into the record paragraphs 4 and 5 from a letter allegedly written on May 7, 1949, which said paragraphs appear in the record as follows, to wit:

"First of all, I'm in prison for something I did not do. But I didn't understand the laws and the rights and the privileges a man has. First, I thought I would have to pay the attorney. Second place, I didn't have any money to pay one. I didn't know that the state would furnish me with one. I have learned that since I've been here in the prison that I had that privilege. The only thing they told me that I had 24 hours to get an attorney or plead guilty, so I didn't know anyone to help me and I thought if I pleaded guilty, they would try to help me, but they didn't. I didn't even have anyone to represent me. My buddy here in prison with me said he would tell the truth, and if he does, you can have my freedom back real soon. I understand I can reopen the case within 60 days.

"Mr. Allen, I have never stolen anything in my life and furthermore, I don't intend to. I was only with this guy, I didn't even know the car was stolen, when we turned over he told me, then I got scared and took off, left my clothes in the car, was scared so bad I forgot all about them. When I started out from the car, I ran clear off and left this guy. So after I got back on the highway 66 I started hitchhiking, and when I got almost to Claremore, there was a car stopped to pick me up. And after we got started on down the road, he said to me why did you run off. It was this same guy that turned the other car over, when I saw it was him, I told him to stop I wanted out. But he kept going. Begged me to ride with him.

"I guess we had got about three miles from where he had picked me up at until the sheriff stopped us and arrested us and took us both to the jail. They held both of us for the same charge."

This letter was a purely self-serving declaration, and not given under oath. The foregoing constitutes a substantial statement of the evidence and proceedings had in support of the motion to vacate the judgment.

An analysis of this proceeding and the motion to vacate and set aside the judgment and sentence and to "permit the defendant to defend herein" discloses that the error complained of, if error at all, was fundamental. We find no cases factually on all fours with the situation herein involved but the situation confronting the court in the case at bar bears marked similarity with that of Whitworth v. State, 80 Okla. Cr. 239, 158 P. 2d 364, 367, 159 P. 2d 277, wherein the court said:

"The affidavit of Leon Whitworth, the co-defendant and brother of this defendant, was made by him after he had testified at the trial of defendant, and had positively sworn that neither he nor the defendant had burglarized the Howe home, or taken the property. It was made after he had been tried and convicted, and was serving a term in the State penitentiary for the identical burglary

with which the defendant stands charged. In his testimony at the preliminary hearing of Rex Lockhart, he stated that he and Lee Scott had used Rex Lockhart's truck prior to the burglarizing of the Howe home. No doubt the court came to the conclusion that after his conviction and sentence, he decided to 'take the whole rap,' and attempted to free his brother. This practice has never been looked upon with favor by the courts. Wells v. State, 16 Okla. Cr. 461, 184 P. 465; Ryal v. State, 16 Okla. Cr. 266, 182 P. 253 and cases cited."

The facts in the case at bar appear in the same light. See, also, Stroshine v. State, 54 Okla. Cr. 411, 22 P. 2d 1037, wherein the defendant on a plea of guilty complained he was denied the aid of counsel. The judgment made the same recitals as did the one in the case at bar. Herein though the defendant denies his guilt, this denial was not made under oath. The principle involved in the Whitworth case is especially applicable to the case at bar. No doubt after having confessed as disclosed by this record and after having entered pleas of guilty, the defendant May decided to assume full responsibility for the crimes of the joint defendants, hence the letter of May 7, 1949, hereinbefore referred to. It occurs to the court that if such were the facts the defendant and his counsel waited an extremely long time to seek to vacate the judgment and sentence for a period of 4 months and 17 days elapsed thereafter before the motion to vacate was filed on September 22, 1949. As hereinbefore indicated the courts do not look with favor upon such practices.

Under the conditions herewith presented the question of vacating the judgment was a matter within the discretion of the trial court. The record is sufficient to support the trial court's conclusion that the defendants were not subject to undue influence by the sheriff and his deputy. Since the trial judge was the same judge who sentenced Coffey and May and who made the hereinbefore referred to statement relative to the advice he gave them at the time of the entering of their pleas of guilty, we must hold the evidence in the record discloses he did not abuse his discretion. The evidence in support of the motion does not bring the case within the rule of Ex parte Stinnett, supra, or Ex parte Cornell, supra, establishing youthfulness, ignorance, feeblemindedness, or illiteracy but to the contrary the record discloses the defendant was advised of his rights by the justice of the peace, by the trial court, and that notwithstanding he waived the right thereto and a plea of guilty was freely and voluntarily entered to the charge of the larceny of the automobile herein involved. Hence the judgment of the trial court in denying the motion to vacate the judgment and sentence therein imposed is accordingly affirmed.

JONES and POWELL, JJ., concur.

## On Rehearing

BRETT, P. J. On petition for rehearing under the authority of Title 22, § 1066, O. S. A. 1941, we are of the opinion, that in view of the defendant's record prior to the occurrence of the issues herein involved, the judgment and sentence should be and the same is hereby modified from 5 years in the penitentiary to a term of 3 years in the State Penitentiary at McAlester, Oklahoma.

JONES and POWELL, JJ., concur.