[Crim. No. 10930. In Bank. July 28, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ODIE WILLARD COFFEY, Defendant and Appellant.

---

Wiener & Weiss and Robert A. Chrisman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant was charged by information with four counts of assault with intent to commit murder (Pen. Code, § 217); with four counts of assault with a deadly weapon upon the person of a police officer (Pen. Code, § 245, subd. (b)); with being armed at the time of said offenses with a pistol capable of being concealed upon the person without having a license to carry such pistol (see Pen. Code, § 12022);[1] and with having suffered a prior felony conviction in the State of Oklahoma.

At trial the prosecution produced substantial evidence to the following effect: On Saturday, October 31, 1964, about 5:30 p.m. Officers Norenberg and Martin of the Anaheim Police Department went to the home of defendant to question him about an alleged misdemeanor hit-run violation. Failing to see the vehicle reported to them as belonging to Coffey, the officers parked about a block away and waited. About 6 p.m. defendant drove up in a car answering the description given

---

[1]This charge was not set forth in a separate count but was made by reference a part of each of the eight specific counts. (See Pen. Code, § 969c.)

the police. The officers activated the red lights on their patrol car and followed defendant who parked in the driveway, emerged from the automobile, and started toward the door of his home.

Officer Norenberg called to defendant that they would like to speak to him. Defendant, ignoring the call, entered his home and closed the door. The officers walked up to the door and knocked upon it several times. Finally defendant's wife opened the door and asked what they wanted. Officer Norenberg then replied, "We would like to speak to the man who was driving this car." Mrs. Coffey inquired as to the purpose of their visit. At this point defendant himself appeared and told the officers that he would not speak to them unless they had an arrest warrant. Officer Norenberg replied "that we could come in there and take him out, if need be." Defendant disappeared into a room in the house and returned almost immediately with two pistols. Pointing them at the officers, who were standing on the steps, he told them to leave his property unless they had a warrant for his arrest. The officers began to withdraw, and as they did so defendant "started shooting." Officer Martin "felt some debris hit [him] in the face" but he and Officer Norenberg retreated unhurt to their patrol car and called for assistance.[2]

Support arrived almost immediately and a rather extended seige was laid to the Coffey residence by some 26 officers who proceeded to force defendant's surrender with tear gas. At one point defendant appeared on the back patio of his house carrying a pistol, whereupon Officer Thompson, stationed in this area, called out to him, "Drop your gun and raise your hands." In response defendant fired several shots at Officer Thompson and at Officer Wilcox standing nearby. Wilcox returned defendant's fire as the latter again withdrew into the house.

A short time later, after the police had begun to lob tear gas into the house, defendant began crawling out of a window. He appeared to have a weapon in his hand and Officer Wilcox called out to him to drop it and place his hands on his head. Defendant crawled back inside and fired several shots at Officer Wilcox and two other officers. Defendant was finally overcome by officers who entered the house with gas

[2]The above is a summary of testimony given by Officer Martin. Officer Norenberg was killed in an airplane crash shortly after the incident in question and did not testify at trial.

masks. In the final struggle, he received a superficial scalp wound; no officers were hurt.

Of the eight counts charged in the information four related to Officers Norenberg and Martin (2 counts, § 217; 2 counts, § 245, subd. (b)). The remaining four counts, charging the same crimes, related to Officers Thompson and Wilcox.

Defendant pleaded not guilty and not guilty by reason of insanity to the offenses charged. He stood mute as to the allegation of being armed with an unlicensed concealable weapon, and it was stipulated that he therefore denied that allegation. He also denied the prior conviction.

Before the date set for trial defendant moved that the portion of the information charging him with a prior conviction be stricken on the ground that he had been denied his constitutional right to the assistance of counsel in the proceedings leading to that conviction. Filed in support of the motion was the sworn declaration of defendant's attorney, which set forth the minute entry reflecting defendant's arraignment on the 1949 charge[3] and summarized further proceedings wherein defendant, in propria persona, entered a plea of guilty and was sentenced to the state prison for five years.[4] In support of the motion defendant filed points and authorities which stated that he "was indigent at the time of his plea," that he "did not understand his right to counsel," and that he "did not clearly and expressly and intelligently waive his right to counsel."[5] Pursuant to stipulation the motion was placed off calendar, reserving to defendant the right to renew it at trial.

On the morning of the trial, and prior to its commencement, the motion was heard in the judge's chambers without a reporter. Though the proceedings at that time are therefore

---

[3]The indicated minute entry, dated April 30, 1949, read as follows: "The State appearing by its attorney, H. H. Brown, and the defendants [Coffey and a codefendant] appearing in person. The defendants entered a plea of guilty. After they were arraigned, they waived everything and they were both told of the charge against them and advised of all their Constitutional rights. They were bond [sic] over to District Court of Rogers County for trial and their bond [sic] were set at $1000.00 each."

[4]The declaration indicated that the proceedings summarized therein would be established by official records to be introduced at hearing on the motion to strike the prior.

[5]It appears that these allegations formed the basis of an application to vacate and set aside the judgment and to withdraw the guilty plea— said application being filed by defendant in the sentencing Oklahoma court some four and one-half months after he had been delivered to the penitentiary. The court's denial of the motion was affirmed by the Oklahoma Criminal Court of Appeals on May 23, 1951. (Coffey v. State (1951) 94 Okla. Crim. 327 [235 P.2d 546].)

not set forth in the trial transcript, the court's ruling is recited in the minutes: "The Court denies the motion without a hearing on grounds that under California law, no such motion can be entertained as it is irregular (*People* v. *Sullivan*, 206 Cal.App.2d 36 at p. 44 [23 Cal.Rptr. 558])." The reporter's transcript indicates that this ruling was based on the lack of statutory authority for such a motion.

Upon denial of the motion, the court asked defendant whether he would like to admit the prior, which he had earlier denied. Counsel for defendant replied as follows: "We want to admit it reserving the right to pursue whatever remedy is available on the motion heretofore heard by the Court with respect to striking the priors [*sic*]." The court thereupon stated: "The record will so indicate that you are now admitting the prior, but that it is not a waiver of any rights that you have on motions heretofore made in denying this or otherwise attack the validity of this prior." Defendant then, upon advice of counsel, admitted the prior conviction.

In the course of the trial defendant testified in his own behalf. Upon cross-examination he was asked whether he had been convicted of a felony, and his counsel promptly objected: ". . . I would like to rephrase the objection we originally made on this particular matter for the purposes of the record that we might refer to." The court asked whether counsel would like to "incorporate by reference." Counsel replied in the affirmative, and the court overruled the objection. Defendant then admitted that he had been convicted of larceny 16 years before in Oklahoma. In response to further questions, by which the prosecutor apparently sought to establish that defendant harbored some animosity toward police officers in general, defendant represented that he had been "railroaded" in the proceedings leading to the Oklahoma conviction.

The jury found defendant not guilty of the charges set out in counts 1 and 2 of the information (assault with intent to commit murder upon Officers Thompson and Wilcox). Defendant was found guilty of the charges set out in counts 3 and 4 of the information (assault with intent to commit murder upon Officers Norenberg and Martin) and it was also found that at the time of committing *these offenses* (i.e., counts 3 and 4) defendant "was armed with a pistol capable of being concealed upon the person. without having a license or permit to carry such firearm." Defendant was also found guilty of the charges set out in counts 5 to 8 (assault with a

deadly weapon upon the persons of all four officers named in the first four counts). Having waived trial by jury on the insanity defense, defendant was found by the court to have been sane at the time of the offenses and at the time of trial.

Defendant made a motion for a new trial, the grounds of which do not appear in the instant record. At his request the hearing on the motion was advanced, whereupon the following took place:

"Mr. Collins [Attorney for defendant] : . . . The Court is familiar with the situation here. I believe the People have a motion which will issue to Part Four, Title Two, Chapter—

"Mr. Enright [Deputy District Attorney]: Yes, your Honor, People wish at this time to strike the allegations of the Deadly Weapons Section, where there was a separate finding on the 12022.[6]

"The Court: The motion has been read, and let it be stricken from the record, and the judgment entered, then.

"Mr. Collins: Waive any further time, your Honor, and request sentence at this time."

After further colloquy between court and counsel, defendant's counsel withdrew his motion for a new trial and the court imposed sentence on count 5 (assault with a deadly weapon upon Officer Thompson) and suspended imposition of sentence on all other counts.[7] It appears that the court, at the

---

[6]Section 12022 of the Penal Code provides in relevant part that "Any person who commits or attempts to commit any felony . . . while armed with any pistol . . . capable of being concealed upon the person, without having a license or permit to carry such firearm as provided by this chapter, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five years nor more than 10 years," said additional term to run *consecutively*. As indicated above, the finding that defendant had been armed with an unlicensed concealable weapon was made *only* in relation to the two counts (3 and 4) wherein defendant was found guilty of assault with intent to commit murder.

[7]"The Court: Do I understand you wish to abandon your Motion for New Trial?

"Mr. Collins: Yes, your Honor.

"The Court: I just want to make sure. I want to check the jury verdict and make sure I have it on the right count.

" . . . . . . . . . .

"Mr. Collins: I believe, your Honor, Count 5, 6, 7 or 8 pertain to 245-b of the Penal Code, of which he was convicted.

"The Court: Right. I finally found it. There is a lot of paper in this file. Count 5. Is there any legal cause why sentence should not be imposed?

"Mr. Collins: None whatsoever.

"The Court: On Count 5 of the Information, as to which defendant has been adjudged Guilty by the verdict of the jury, I sentence the de-

time of pronouncing sentence or shortly thereafter, purported to amend the information on its face in accordance with the above-mentioned motion of the district attorney. We have set forth the information as amended in the footnote.[8]

The minutes of the court reflect the motion of the district attorney, the amendment of the information, and the rendition of judgment, in the following language: "Motion by the People to strike the deadly weapon section. Motion granted. The Information was amended by striking 'deadly weapon' and inserting the words 'dangerous weapon.' The motion for a new trial is withdrawn. No legal cause appearing why judgment should not now be pronounced, it is the judgment of the Court that the defendant be sentenced to the State Prison for the term prescribed by law on Count 5. The imposition of sentence is suspended on Counts 3, 4, 6, 7 and 8." Apparently no reference was made at this time to the prior conviction.

The amended abstract of judgment described the crime upon which defendant was sentenced as follows: "Assault upon a Police Officer with a Dangerous Weapon, a lesser and included offense contained in Sec. 245b of the Penal Code of the State of California in violation of Section 245b of the Penal Code of the State of California . . ."[9] The abstract

---

fendant to the State Penitentiary for the term prescribed by law. The Court suspends the imposition of sentence on all other counts as to which the defendant has been convicted."

[8]In the copy of the information appearing in the clerk's transcript on appeal counts 5 through 8 charge defendant with "Violation of Section 245b of the Penal Code of the State of California (Assault Peace Officer with a ~~Deadly Weapon~~ (/dangerous weapon/) [not initialed]), in that on or about the 31st day of October, 1964, in the County of Orange, State of California, the said ODIE WILLARD COFFEY did willfully, unlawfully and feloniously assault [named officer] with a deadly weapon, to-wit: a pistol, at a time when the said [named officer] was a peace officer engaged in the performance of his duties and such fact was known and reasonably should have been known by the said ODIE WILLARD COFFEY." No alteration was made as to counts 3 and 4, and the paragraph charging violation of section 12022 was left unchanged.

[9]Section 245, subdivision (b), provides in relevant part that "Every person who commits an assault with a deadly weapon or instrument or by any means likely to produce great bodily injury upon the person of a peace officer . . . and who knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties, when such peace officer . . . is engaged in the performance of his duties shall be punished by imprisonment in the state prison not exceeding 15 years; provided, that if such person has previously been convicted of a felony under the laws of this state or has previously been convicted of an offense under the laws of any other state or of the United States which, if committed in this state, would have been punishable as a felony, he shall be punished by imprisonment in the state prison for five years to life."

then recited defendant's prior conviction and went on as follows: "Defendant was charged and was found to have been armed with a dangerous weapon at the time of commission of the offense, or a concealed dangerous weapon at the time of his arrest within the meaning of Penal Code Sections 969c and 3024."[10]

■ ■ We deal first with the manifest difficulties presented by the record of judgment herein. We have concluded that the court's abortive attempt to reflect in the information and judgment the ambiguous motion of the district attorney has resulted in a judgment and record so confused and uncertain as to render meaningful analysis impossible. This state of the record, together with the fact that the court's action represents a purported exercise of discretionary powers as to sentencing, precludes present modification or correction by this court (cf. *People* v. *Baca* (1966) 247 Cal.App.2d 487, 489-498 [55 Cal.Rptr. 681]), and we must therefore reverse the judgment with directions to undertake again all such proceedings as may be necessary, or as may be raised by proper future motions of the parties, subsequent to the entry of the jury verdicts herein.

Defendant further urges that the trial court should not have refused to hear his pretrial motion to strike the prior conviction. We agree.

■ The right to the assistance of counsel at trial, the scope of which was enunciated in *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], applies retrospectively without regard to time. (*Doughty* v. *Maxwell* (1964) 376 U.S. 202 [11 L.Ed.2d 650, 84 S.Ct. 702]; *United States* v. *LaVallee* (2d Cir. 1964) 330 F.2d 303, 310-312; *In re Woods* (1966) 64 Cal.2d 3, 5-6 [48 Cal.Rptr. 689, 409 P.2d 913].) ■ Further, to the extent that statu-

---

[10]Section 969c provides that "Whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring said defendant within the operation of Section 3024 of the Penal Code relating to certain minimum penalties or of Section 12022 of the Penal Code," that fact may be charged in the accusatory pleading, setting forth the nature of the weapon, and must be separately determined at the trial.

Section 3024 provides in relevant part for certain minimum penalties as to one armed with a *deadly weapon* at the time of the offense, or possessing a concealed *deadly weapon* at the time of his arrest. The section goes on to define a deadly weapon "to include any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, metal knuckles, any dirk, dagger, *pistol, revolver, or any other firearm*, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club." ( Italics added.)

Section 12022 is set forth in relevant part at fn. 6, *ante*.

tory machinery relating to penal status or severity of sanction is activated by the presence of prior convictions, it is imperative that the constitutional basis of such convictions be examined if challenged by proper allegations. (*In re Woods, supra,* 64 Cal.2d 3; cf. *In re Streeter* (1967) 66 Cal.2d 47 [56 Cal.Rptr. 824, 423 P.2d 976].) ▉ The fact that a prior conviction was sustained in another jurisdiction does not preclude such examination. ''To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.'' (*United States* v. *Jackson* (2d Cir. 1957) 250 F.2d 349, 355; see *In re Woods, supra,* 64 Cal.2d 3, 5.)

▉ Though these principles were first given application in a series of cases involving collateral attacks on final judgments (*In re Woods, supra,* 64 Cal.2d 3; *In re Luce* (1966) 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker* (1966) 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921]), it is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court. We are further of the view that the procedure here sought to be utilized, to wit, a motion to strike the prior before trial, is a proper method by which to raise the issue and initiate proceedings to determine the constitutional validity of the prior conviction.[11]

▉ We emphasize, however, that the issue must be raised by means of allegations which, if true, would render the prior conviction devoid of constitutional support. ''One seeking to challenge prior convictions charged against him may do so only through a clear allegation to the effect that, in the proceedings leading to the prior conviction under attack, he *neither was represented by counsel nor waived the right to be so represented.*'' (Original italics.) (*People* v. *Merriam* (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161].) ▉ In the instant case defendant, by means of his notice

[11]The constitutional basis of the inquiry at issue requires that a defendant be permitted to initiate the indicated proceedings even in those cases wherein the Legislature has determined that the striking of prior convictions can occur only upon motion of the prosecutor. (See Health & Saf. Code, § 11718; *People* v. *Sidener* (1962) 58 Cal.2d 645 [25 Cal. Rptr. 697, 375 P.2d 641].)

of motion, points and authorities, and declaration of attorney, clearly alleged that he was not represented by counsel in the course of the 1949 Oklahoma proceedings. He further alleged that he "did not clearly and expressly and intelligently waive his right to counsel."

The Attorney General contends that the latter allegation does not constitute an allegation of nonwaiver as required by *Merriam*. He relies upon the case of *People* v. *DeJean* (1967) 249 Cal.App.2d 220 [57 Cal.Rptr. 211]. There defendant was charged with a violation of section 11501 of the Health and Safety Code and with three prior convictions, two of which were for violation of federal narcotics laws. He admitted the prior convictions and was found guilty of the substantive offense.[12] On appeal he, for the first time, alleged that in the proceedings leading to the two prior federal narcotics convictions he " 'did not have assistance of counsel, and did not *knowingly* waive any such assistance.' " (P. 233.) The Court of Appeal undertook an examination of the records of the prior convictions and determined that defendant had waived his right to counsel as to each. The defendant's allegation that such waiver was not entered into "knowingly" was considered too conclusory to merit a present factual inquiry—especially in light of the facts (1) that defendant offered no evidentiary support for the allegation and (2) that the records clearly showed that defendant had been expressly advised of his rights to counsel and had *expressly* waived the same. (*People* v. *DeJean, supra,* 249 Cal.App.2d 220, 231-234.)

The *De Jean* case cannot bear the weight sought to be placed upon it by the Attorney General. First, the determination there undertaken by the Court of Appeal is clearly one of the nature sought to be prevented by our decision in *People* v. *Merriam, supra,* 66 Cal.2d 390.[13] Second, it is clear that the Court of Appeal in *DeJean* confused the matter of *raising* the relevant issue with that of *resolving* it. ▮ Defendant DeJean's allegation that he had not waived counsel "knowingly" must clearly be considered an allegation of nonwaiver, for a relinquishment of rights unaccompanied by a state of mind capable of appreciating the implications and

---

[12]Section 11501 provides that the penalty for a first violation shall be five years to life with a minimum of three years actual time served. The penalty for violation with two prior narcotics offenses is 15 years to life with a minimum of 15 years actual time served.

[13]In fairness to the Court of Appeal, it should be noted that the decision in *DeJean* preceded by more than a month our decision in *Merriam*.

consequences of such action is not a waiver of such rights.[14] The fact that the allegation was made ''without the slightest suggestion from him of any fact in support of that conclusion'' (*People* v. *DeJean, supra,* 249 Cal.App.2d 220, 233) is relevant not to the raising of the issue, but rather to the failure of defendant DeJean to produce evidence in support of it.

We hold that the allegations made by defendant in support of his motion to strike the 1949 Oklahoma prior conviction were sufficient to justify a hearing in the trial court for the purpose of determining whether, in the proceedings leading to that conviction, defendant was accorded his right to counsel in accordance with the Sixth and Fourteenth Amendments.

Although the facts of this case do not call upon us to delineate the nature of the contemplated hearing, we do so for the guidance of courts and counsel who will be called upon to deal with similar matters in the future: *First,* when a defendant, whether by motion to strike the prior conviction or convictions on constitutional grounds, or by denial of such prior conviction or convictions on constitutional grounds at the time of entering his plea to the same, raises the issue for determination, the court shall, prior to trial, hold a hearing outside the presence of the jury in order to determine the constitutional validity of the charged prior or priors in issue. *Second,* in the course of such hearing the prosecutor shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant ''has suffered such previous conviction.'' (Pen. Code, § 1025.) *Third,* when this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional right to counsel was infringed in the prior proceeding at issue.[15] *Fourth,* if defendant bears this burden, the prosecution shall have the right to produce evidence in rebuttal. *Fifth,* the court shall make a finding on the basis of the evidence thus produced and shall

---

[14]Compare the following language of the United States Supreme Court: ''The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. *Anything less is not waiver.*'' (Italics added.) (*Carnley* v. *Cochran* (1962) 369 U.S. 506, 516 [8 L.Ed.2d 70, 82 S.Ct. 884].)

[15]Though the burden of proof as to the constitutionality of the charged prior conviction remains with the prosecution, and the burden of producing evidence rests initially with it, the latter burden shifts to the defendant upon proof of the fact of his having ''suffered'' the prior conviction. (See Evid. Code, § 550.)

strike from the accusatory pleading any prior conviction found to be constitutionally invalid.

Our holding that the trial court should have heard defendant's motion to strike the prior conviction does not, of course, necessarily require that there be an entire new trial. If, upon remand, the trial court determines that no violation of defendant's right to counsel occurred in the course of the 1949 Oklahoma proceedings, it should, in accordance with that portion of this opinion dealing with ambiguity in the record of judgment, undertake necessary and proper proceedings subsequent to the entry of the jury verdicts. In the event, however, that it is determined that the 1949 conviction is invalid, the question then arises whether the use to which that conviction was put at trial was improper.

It should first be noted that the prosecution's use at trial of defendant's prior conviction can be viewed as serving two purposes. First, the *fact* of the conviction was utilized to impeach defendant's credibility after he had testified in his own defense. (Code Civ. Proc., § 2051; see Evid. Code, § 788.)[16] Second, defendant's subjective reaction to that conviction was utilized to show motive for the offenses for which defendant was on trial in the instant case. It would seem, however, that the latter evidence would be properly admissible even if the prior conviction were constitutionally invalid, for the validity or invalidity of the judgment of conviction is not relevant to the question of defendant's attitudes and motives at the time of the incident for which he was on trial in California. Therefore, if the prior was in fact invalid, its only possible prejudicial effect upon the defense lay in the impeachment of defendant's testimonial credibility.

We are convinced that the use of a constitutionally invalid prior conviction to impeach testimonial credibility is improper, and that to allow such impeachment is error under California law. (Cf. *People* v. *Hamilton* (1948) 33 Cal.2d 45, 50 [198 P.2d 873]; *Macfarlane* v. *Department of Alcoholic Beverage Control* (1958) 51 Cal.2d 84, 89 [330 P.2d 769]; *People* v. *Banks* (1959) 53 Cal.2d 370, 382, fn. 7 [1 Cal.Rptr. 669, 348 P.2d 102].) Further, we are of the view that such error is of federal constitutional dimension. It is clear that a conviction of crime, no matter when sustained, is

---

[16]The jury was properly instructed as follows: "The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you for only one purpose, namely, in judging the credibility of that witness. . . ." (CALJIC No. 54-B.)

constitutionally invalid if it was obtained in violation of the Sixth and Fourteenth Amendments. (*Gideon* v. *Wainwright, supra,* 372 U.S. 335; *Doughty* v. *Maxwell, supra,* 376 U.S. 202; *United States* v. *LaVallee, supra,* 330 F.2d 303; *In re Woods, supra,* 64 Cal.2d 3.) We think it equally clear that the utilization of such a conviction, at the trial of a subsequent offense, for any purpose leading to a conviction for such subsequent offense, is violative of the due process clause of the Fourteenth Amendment. Therefore, in assessing the prejudicial effect of such erroneous utilization, we are required to apply the test recently set forth by the United States Supreme Court in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

 Preliminary to applying the indicated test in the instant case, we reject defendant's contention that impeachment by means of a constitutionally invalid prior conviction is per se prejudicial, and that error committed through allowing such impeachment over proper objection cannot be considered harmless under any circumstances. "Although . . . there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, [fn. omitted]" (*Chapman* v. *California, supra,* 386 U.S. 18, 23), those rights are by their nature such that their infraction renders impossible a meaningful assessment of prejudice *on the record.*[17] Such assessment is quite possible in the instant case, and we therefore undertake the indicated task in light of the entire record before us. Our inquiry, as indicated above, is whether the prosecution has proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California, supra,* 386 U.S. 18, 24.)

As we have recently pointed out, the *Chapman* rule, while requiring that we look beyond the probability of a different result absent constitutional error, does not demand that a conviction be reversed "for the sole reason that we *might* be able to conceive of *some possibility,* however remote, that a jury *could* have been marginally influenced" by such error. (*People* v. *Modesto* (1967) 66 Cal.2d 695, 712 [59 Cal. Rptr. 124, 427 P.2d 788].) Rather, the rule requires reversal

---

[17]Among the indicated rights is that of the right to counsel at trial. (*Gideon* v. *Wainwright, supra,* 372 U.S. 335.) It must be emphasized, however, that we are not here concerned with the bare right to counsel; rather we are concerned with a derivative right to remain free from impeachment of testimonial credibility by means of prior convictions obtained in violation of the right to counsel.

if, upon an examination of the entire record, it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict, and the error must be considered harmless if the likelihood of material influence is not within the realm of reasonable possibility. In the circumstances of the instant case, the application of the indicated standard requires that we direct our attention to defendant's courtroom testimony.

Defendant testified in substance that on the day in question he left his place of business in the late afternoon and, after stopping briefly at a tavern, became involved in a minor automobile collision; that, after giving proper identification and again visiting a tavern, he drove to his home; that two police officers came to his home and demanded that he accompany them to police headquarters for questioning; that, when he refused to comply with this demand in the absence of a warrant, the officers commenced to curse at him in the presence of his wife and children and one of them forced his way into defendant's home; that, when the officers refused to leave his property, he got and exhibited two pistols in order to compel them to leave; that when they still refused, he fired several shots through a window in order to frighten them away; that, upon the arrival of additional police, he attempted to surrender but was fired upon and withdrew into the house, meanwhile returning fire in the general direction from which the shots had come; that later, after the house had been filled with tear gas, he attempted to leave through a window, but he heard two shotgun blasts and withdrew into the house, again returning fire in the general direction from which the blasts had come; and that he was finally overcome by tear gas and subdued by officers who entered his house. Defendant emphasized that he at no time had any intention of injuring or taking the life of any police officer, and that he never aimed his weapon at any person identifiable by him as such.

It is the contention of the Attorney General that even if we take defendant's testimony at face value, the elements of each of the crimes of which he was found guilty are established therein, and that therefore he could not have been prejudiced by impeachment. Reliance is placed upon section 834a of the Penal Code, which provides as follows: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a police officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." ▮▮▮ [See fns. 18, 19.] The Attorney General urges that in view of the duty created by

this statute,[18] defendant's actions rendered him criminally liable for the crimes of which he was found guilty—even if the circumstances provoking those actions were in fact as he alleged in his testimony.

There are three answers to this contention. First, section 834a concerns itself with *arrest*, not with detention for questioning.[19] Since there was no evidence adduced at trial to the effect that an arrest was in progress prior to defendant's initial burst of gunshots, section 834a could at most be applicable to the two counts involving Officers Wilcox and Thompson.

Second, we note that the jury was not instructed as to section 834a, and we think that this fact precludes the Attorney General from having recourse to the section in order to show that the error here in question would be harmless. The question here is that of the effect of error upon a jury instructed as the jury herein was instructed—not the effect of such error upon a jury instructed as the People would now prefer that it had been instructed.

Third and finally, defendant testified at trial that he had no intention of harming or killing anyone and that he at no time aimed his gunshots at any person identifiable by him as such. It would seem clear that if defendant's testimony on this point were believed by the jury, it could not properly find violations of section 217 or section 245, subdivision (b), of the

---

[18]Prior to the adoption of section 834a by the 1957 Legislature, it was the general rule that an officer making an unlawful arrest was not engaged in the proper discharge of his duties and could be resisted by means of reasonable force. (See *People* v. *Spinosa* (1953) 115 Cal.App.2d 659, 664 [252 P.2d 409]; *Jackson* v. *Superior Court* (1950) 98 Cal.App.2d 183, 189 [219 P.2d 879]; *People* v. *Perry* (1947) 79 Cal.App.2d Supp. 906, 914 [180 P.2d 465].) The enactment of section 834a clearly represents an effort to remove disputes as to the legality of arrest from the street to the courtroom and it has been properly held that the indicated privilege of resistance is no longer the law of California. (*In re Bacon* (1966) 240 Cal.App.2d 34, 52-53 [49 Cal.Rptr. 322]; *People* v. *Burns* (1961) 198 Cal.App.2d Supp. 839 [18 Cal.Rptr. 921].)

[19]We do not reach this conclusion wholly by reference to the maxim *expressio unius est exclusio alterius.* The report of the Senate Interim Judiciary Committee concerned with the passage of section 834a, of which we take judicial notice for the purpose of statutory interpretation (see Witkin, Cal. Evidence (2d ed. 1966) § 154, pp. 148-149), clearly shows that the statute, as originally referred to committee, forbade forceful resistance by one who knows or should know "that he is being *stopped, detained. for questioning,* or arrested by a peace officer, . . ." (Italics added.) (Fourth Progress Report to the Legislature by the Senate Interim Judiciary Committee (1957), Appendix to Journal of the Senate, vol. 1, pp. 426-427.) The deletion of the emphasized language in the statute as finally passed indicates a clear legislative intention that the effect of section 834a be limited to cases of actual arrest.

Penal Code, for basic to the indicated varieties of aggravated assault is the crime of simple assault.[20] "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) "One could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person. . . . The crime here involved, if defendant's testimony is accepted as true, would seem to be a misdemeanor. 'Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor.' (Pen. Code, § 417.) "[21] (*People* v. *Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281].) Even if the jury had been instructed as to section 834a of the Penal Code, it is clear that a breach of the duty of submission imposed by that section, absent any intent to cause injury to a police officer, could not result in aggravated assault of the varieties here charged.

For these reasons we must reject the contention of the Attorney General that, because defendant's testimony itself establishes all elements of the crimes of which he was found guilty, no prejudice could result from erroneous impeachment by means of a constitutionally invalid prior. As we have shown, the vital element of intent to injure is certainly not established by that testimony, and section 834a, even if it were here applicable to all crimes at issue, could not supply such intent. We therefore turn now to an assessment of the effect of impeachment upon the jury's findings as to the crucial elements of intent.

For these purposes it is helpful to consider in two categories the crimes of which defendant was found guilty. The first category is comprised of counts 3, 4, 7 and 8 of the information: assault with intent to commit murder (§ 217) against Officers Norenberg and Martin, and assault with a deadly weapon upon a peace officer (§ 245, subd. (b)) against the same persons.[22] In the second category are counts 5 and

---

[20]The jury was properly so instructed.

[21]The jury herein was properly instructed that section 417 sets forth a lesser offense necessarily included in those charged. (Cf. *People* v. *Wilson* (1967) 66 Cal.2d 749, 757-761 [59 Cal.Rptr. 156, 427 P.2d 820].)

[22]Our examination of the record convinces us that the four counts involving Norenberg and Martin (3, 4, 7, 8) all relate only to the single incident at defendant's front door.

6: assault with a deadly weapon upon a police officer against Officers Wilcox and Thompson.

As to the first category we note that the record contains no direct evidence to the effect that defendant intended to murder or harm Norenberg or Martin. Defendant's testimony expressly disclaims any such intent, and the testimony of Officer Martin offers only circumstantial support which, though certainly sufficient to support the finding of the jury, is nevertheless weak. For instance, Officer Martin testified that after defendant had asked the officers to leave he appeared with the pistols and pointed them "at" them, and that as the officer began to withdraw defendant "started shooting." Nowhere does Officer Martin state, as fact or opinion, that defendant was directing his fire at them. Defendant's testimony was that he fired through the window alongside the open front door in order to scare the officers, and the testimony of Officer Martin is supportive of this statement in that he testified that he was struck by some "debris," presumably broken glass, immediately after the first shots were fired. Assuming that defendant's prior Oklahoma conviction is determined to be invalid, we are of the view that, under the above state of the evidence, there is a reasonable possibility that erroneous impeachment of defendant's testimonial credibility by means of such prior conviction materially influenced the jury in arriving at its verdicts as to counts 3, 4, 7, and 8; we therefore conclude as to these counts that the prosecution has not proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California, supra*, 386 U.S. 18, 24.)

As to the second category, the assault with a deadly weapon upon Officers Wilcox and Thompson, there was precise and unequivocal testimony by the officers involved that defendant, when requested to drop his weapon and surrender, turned and fired directly at them. Further, there was physical evidence to the effect that bullets fired at this time by defendant struck very near the officers. Defendant's story, of course, was that the officers opened fire upon him when he was trying to surrender, and that he returned their fire and ran back into the house. However, there was also evidence to the effect that the officers were under explicit instructions not to fire upon defendant unless fired upon. We also consider the fact that the jury was properly instructed that the presumption of truth-telling on the part of a witness may be repelled by the

interest of that witness in the case.[23] Assuming that defendant's prior Oklahoma conviction is determined to be invalid, and viewing the evidence and instructions as a whole, we are of the view that there is no reasonable possibility that erroneous impeachment of defendant's testimonial credibility by means of such prior conviction materially influenced the jury in arriving at its verdicts as to counts 5 and 6; we therefore conclude as to these counts that the prosecution has proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California, supra,* 386 U.S. 18, 24.)[24]

Defendant finally contends that the evidence was insufficient to support the verdicts. We deem it too clear to warrant extended discussion that the testimony of the several officers here involved, if believed, was generously ample to support the verdicts rendered.

It appears from the foregoing that the judgment must be reversed. Upon remand the trial court is directed to hear and determine defendant's motion to strike the prior conviction on the ground that it was obtained in violation of the Sixth and Fourteenth Amendments. If it determines that the prior conviction is constitutionally valid, the trial court is further directed to reinstate the jury verdicts and undertake all

---

[23]The instruction given, CALJIC No. 52, provides in relevant part as follows: "The character of the witnesses, as shown by the evidence, should be taken into consideration for the purpose of determining their credibility, that is whether or not they have spoken the truth. The jury may scrutinize the manner of witnesses while on the stand, and may consider their relation to the case, if any, and also their degree of intelligence. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies; his interest in the case, if any, or his bias or prejudice, if any, for or against one or any of the parties; by the character of his testimony, or by evidence affecting his character for truth, honesty or integrity, or by contradictory evidence."

[24]Distinguishable from the case at bench is *People* v. *Torres* (1964) 61 Cal.2d 264 [37 Cal.Rptr. 889, 391 P.2d 161]. There the exclusion of evidence relating to an alibi defense as to one count of the indictment was held to be prejudicial error, and we further held that the error, although not relating directly to the alibi defense as to an additional count, was also prejudicial as to that count. We reasoned that defendant's credibility was in issue as to both counts and that "the atmosphere of falsity infected the whole of his defense." (61 Cal.2d at p. 268.) However, although the *Torres* opinion does not explicitly outline the testimony as to the additional count, we think it a fair inference that the evidence was closely balanced as to the identity of the wrongdoer, and that therefore the admission of evidence erroneously excluded might have tipped the balance in favor of the defendant. In the instant case, on the other hand, we evaluate the effect of evidence not excluded but erroneously admitted, and we conclude as to counts 5 and 6 that, in view of the convincing and extensive evidence produced by the prosecution, there is no reasonable possibility that such erroneous admission contributed to the verdicts.

subsequent proceedings as may be necessary in the premises or rendered proper by motions of the parties. If it determines that the prior conviction is constitutionally invalid, the trial court is directed (1) to reinstate the jury verdicts as to counts 5 and 6 and to undertake all subsequent proceedings as may be necessary in the premises or rendered proper by motions of the parties as to those counts, and (2) to proceed according to law upon counts 3, 4, 7 and 8 of the information.

The judgment is reversed and the cause is remanded to the trial court for further proceedings under the directions and in conformity with the views herein expressed.

McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

TRAYNOR, C. J.—Concurring and Dissenting.

I concur in the judgment and the opinion of the court except for the holding that an erroneous impeachment of defendant by an unconstitutional prior felony conviction would be harmless beyond a reasonable doubt as to counts 5 and 6.

Although there is more evidence of felonious intent on counts 5 and 6 than on counts 3, 4, 7, and 8, there is a direct conflict on all counts between defendant's testimony and the prosecution's evidence of felonious intent. Since any evidence introduced to impeach defendant's credibility would apply to all counts, it is highly unlikely that a jury would assess defendant's credibility on a count-by-count basis. (See Code Civ. Proc., § 2061, subd. 3.) When a defendant's credibility is in issue, error affecting his credibility as to any count necessarily affects all counts in which credibility is in issue. (*People* v. *Torres*, 61 Cal.2d 264, 267 [37 Cal.Rptr. 889, 391 P.2d 161].) If, as the majority opinion correctly concludes, the jury might not have been convinced beyond a reasonable doubt that defendant's testimony was false as to counts 3, 4, 7, and 8, in the absence of the impeaching evidence, it likewise might not have been convinced beyond a reasonable doubt that defendant's testimony was false as to counts 5 and 6.

Peters, J., concurred.

Appellant's petition for a rehearing was denied September 21, 1967. Traynor, C. J., and Peters, J., were of the opinion that the petition should be granted.